**Henry N. AKINYEMI, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. 91–3348.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 8, 1992.

Decided July 16, 1992.

Ralph M. Schelly (argued), Chicago, Ill., for petitioner.

Fred Foreman, U.S. Atty., Crim. Div., Chicago, Ill., William J. Howard (argued), David J. Kline, Dept. of Justice, Office of Immigration Litigation, Richard L. Thornburg, U.S. Atty. Gen., Washington, D.C., A.D. Moyer, Michael L. Harper, Samuel Der–Yeghiayan, I.N.S., Chicago, Ill., for respondent.

Before CUMMINGS, POSNER, and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

Henry Akinyemi, a Nigerian national who has been ordered deported, appeals the decision of the Board of Immigration Appeals (BIA) that refused to grant him a discretionary waiver of deportation under section 212(c) of the Immigration and Nationality Act, 8 U.S.C. § 1182(c). Mr. Akinyemi argues that the BIA abused its discretion in denying him relief.[1] For the following reasons, we grant the petition for review and remand the case to the BIA for further proceedings.

## I

## BACKGROUND

Henry Akinyemi entered this country illegally in 1978. He married a United States citizen and was granted permanent resident status in 1980. Mr. Akinyemi and his wife, who had no children together, separated in 1982. In 1983, Mr. Akinyemi met Dorothy Dudley, who is now his wife, and they began living together. In 1986, Ms. Dudley and Mr. Akinyemi had a son, Aderemi. Ms. Dudley also has a daughter from her first marriage.

In 1986, Mr. Akinyemi pleaded guilty in the federal court in Illinois to conspiracy, and to importing and possessing heroin with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), 952(a) and 963, and 18 U.S.C. § 2. The amount involved was about 156 grams of a mixture containing heroin. Mr. Akinyemi's role in the conspiracy included driving his two coconspirators to the airport and to the passport office, and making telephone calls. Mr. Akinyemi was to receive payment for his part in the conspiracy. The conspiracy, although involving only a single transaction, took place over a month. Mr. Akinyemi was sentenced to five years incarceration and ten years special parole term. The Immigration and Naturalization Service (INS) commenced deportation proceedings against Mr. Akinyemi during his incarceration.

While he was in prison, Mr. Akinyemi was employed by UNICOR Industries first as an assembler and then as a production clerk. The record indicates that Mr. Akinyemi was a dedicated and responsible worker for UNICOR and that he received achievement awards and bonuses for his work. The record contains memoranda from several supervisors and foremen at

---

[1] Mr. Akinyemi also argued that under 8 U.S.C. § 1105a(a)(3) he was entitled to an automatic stay of deportation while this appeal was pending. At oral argument, he conceded that this argument was untenable in view of the December 12, 1991 amendment of the effective date of the statute. Therefore we do not address the issue.

UNICOR recommending him for awards and bonuses and praising his "superior quality work," his consistent striving "to accomplish all tasks given to him far ahead of schedule without diminishing the quality of production," his "extraordinary and impressive work habits," his "tremendous initiative," courtesy, promptness, and willingness to work. At UNICOR, Mr. Akinyemi devised his own filing system for purchase requests, and on one occasion Mr. Akinyemi retrieved several valuable Radio Mount Junction Box Assemblies from a trash receptacle, an action which resulted in substantial savings for UNICOR. While in prison, Mr. Akinyemi also took courses in information processing, computers, and clerical subjects; his transcript shows that his overall performance in these courses was given the highest rating, indicating an "exceptional skill level."

After his release from prison, according to Mr. Akinyemi's testimony, he worked first as a sales representative and then in a clerical position at a personnel services organization. The record contains a letter from this last employer stating that Mr. Akinyemi is an exemplary employee.

While he was in prison, Mr. Akinyemi saved the small amounts of money he made working at UNICOR and regularly sent checks to Ms. Dudley. At the hearing, Ms. Dudley testified that Mr. Akinyemi provided financial support for the family, and that her daughter considered him her father and loved him. In an affidavit, Ms. Dudley's mother testified that Mr. Akinyemi supported his family and was a responsible and hardworking person. Mr. Akinyemi and Ms. Dudley were married while his appeal was pending before the BIA.

## II

### BIA PROCEEDINGS

In deportation proceedings held before an Immigration Judge (IJ), Mr. Akinyemi conceded that he was deportable under section 241(a) of the Immigration and Nationality Act,[2] but requested a waiver of inadmissibility under section 212(c) of the Act. 8 U.S.C. § 1182(c). The IJ found that Mr. Akinyemi was statutorily eligible for section 212(c) relief, but declined to exercise his discretionary authority in Mr. Akinyemi's favor. Mr. Akinyemi appealed the IJ's decision to the Board of Immigration Appeals. Because of the seriousness of his offense, the BIA determined that Mr. Akinyemi would be required to show "unusual or outstanding equities," that is, unusual or outstanding favorable factors, "if he is to have the possibility of receiving a favorable exercise of discretion." BIA Decision at 4 (R. 1) (July 30, 1991).

The BIA determined that, although Mr. Akinyemi had shown favorable equities, those equities did not rise "to the level of the unusual or outstanding." *Id.* at 5. In so determining, the BIA noted that Mr. Akinyemi "point[ed] out his close family ties in this country, his favorable employment history, his residence of long duration in this country, and his genuine rehabilitation since the incident which led to his conviction." *Id.* at 2. However, in weighing these equities, the BIA took into consideration that Mr. Akinyemi's eleven years of residence had not begun until he was a 26-year-old adult and that two years of his residence had been spent in prison. Moreover, the BIA noted that, although his family might suffer some hardship, his wife had been able to support and care for the two children while Mr. Akinyemi was in prison. Although the BIA acknowledged Mr. Akinyemi's favorable employment history and education, it determined that they did not constitute unusual or outstanding equities. In addition, the BIA noted the negative factors contained in the record, namely, Mr. Akinyemi's initial illegal entry into the United States, the month-long duration of the conspiracy to bring drugs into the United States, and the desire for remuneration which prompted his participation in the conspiracy. Finally the BIA noted that because it found that Mr. Akinyemi had not presented unusual or outstanding equities, it did "not need to address the

**2.** Section 241 allows the Attorney General, acting through the INS, to deport permanent residents — dent aliens with one or more drug-related convictions. 8 U.S.C. § 1251(a)(2)(B).

issue of rehabilitation." *Id.* at 5. The BIA dismissed Mr. Akinyemi's appeal.

## III

## ANALYSIS

Judicial review of final deportation orders is provided by 8 U.S.C. § 1105a(a). We review the BIA's decisions for abuse of discretion, and our review is "limited to whether the discretion was actually exercised and whether it was exercised in an arbitrary or capricious manner." *Cordoba–Chaves v. INS*, 946 F.2d 1244, 1246 (7th Cir.1991). A discretionary decision of the BIA may be reversed only if it "was made without a rational explanation, . . . inexplicably departed from established policies, or rested on an impermissible basis." *Id.* (citing *Bal v. Moyer*, 883 F.2d 45, 46 (7th Cir.1989)).

 Under section 212(c) of the Immigration Act, the Attorney General (or his delegate, the BIA) has discretion to waive the deportation of aliens who have been lawful permanent residents for seven years and whose deportation has been ordered for certain specified grounds.[3] Statutory eligibility does not automatically entitle the alien to a waiver of deportation. Whether waiver is granted is a matter of discretion for the Attorney General, and, in exercising that discretion, the Attorney General balances the social and humane considerations in the alien's favor against any adverse factors that demonstrate his undesirability as a permanent resident in the United States. *See Cordoba–Chaves*, 946 F.2d at 1247 (citing *Matter of Edwards*, Interim Decision 3134 (available on WESTLAW, FIM–BIA database), 1990 BIA LEXIS 8 (BIA 1990)). The alien bears the burden of demonstrating that his application war-

rants favorable consideration. *Id.* In the presence of serious adverse factors, the BIA may require a heightened showing of favorable evidence, which may have to involve unusual or outstanding equities. *See Matter of Buscemi*, 19 I & N Dec. 628, 633 (BIA 1988). In determining whether the alien has shown unusual or outstanding equities, the BIA must conduct a full examination of an alien's equities and must consider all favorable factors. *See Matter of Edwards*, Interim Decision 3134 (BIA 1990) ("a proper determination as to whether an alien has demonstrated unusual or outstanding equities can only be made after a complete review of the favorable factors in his case."). Favorable factors include

> family ties within the United States, residence of long duration in this country (particularly when the inception of residence occurred while the respondent was of young age), evidence of hardship to the respondent and family if deportation occurs, service in this country's Armed Forces, a history of employment, the existence of property or business ties, evidence of value and service to the community, *proof of a genuine rehabilitation if a criminal record exists,* and other evidence attesting to a respondent's good character.

*Matter of Marin*, 16 I & N Dec. 581, 583 (BIA 1978) (emphasis supplied); *see also Akrap v. INS*, 966 F.2d 267, 272 (7th Cir. 1992). A showing of outstanding equities does not compel relief; in exercising its discretion, the BIA may determine that the seriousness of the offense and other negative factors outweigh even unusual or outstanding equities. *See Cordoba–Chaves*, 946 F.2d at 1247.

 Because Mr. Akinyemi's criminal offense was a serious one, the BIA required

---

**3.** Section 212(c) states:

> Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to the provision of paragraphs (1)–(25), (30), and (31) of subsection (a) of this section. Nothing contained in this subsection shall limit the

authority of the Attorney General to exercise the discretion vested in him under section 1181(b) of this title.

8 U.S.C. § 1182(c). Although section 212(c) expressly applies only to aliens who are returning "to a lawful unrelinquished domicile of seven consecutive years," it has been interpreted to apply also to deportable aliens who have not left the country and who meet the seven-year requirement. *Variamparambil v. INS*, 831 F.2d 1362, 1361 n. 1 (7th Cir.1987).

a showing of unusual or outstanding equities. The BIA determined that Mr. Akinyemi had not made the required showing. In this appeal, Mr. Akinyemi contends that the BIA's determination was erroneous and that its denial of waiver was an abuse of discretion. Specifically, Mr. Akinyemi contends that it was error for the BIA to fail to consider rehabilitation in determining whether he had shown unusual or outstanding equities. He also contends that the BIA did not give enough weight to the emotional hardship his family would suffer without him and that the BIA did not properly value his employment record.

Recently, in *Vergara–Molina v. INS*, 956 F.2d 682, 685 (7th Cir.1992), this court made clear that, in complying with the methodology established in *Edwards*, "[t]here can be no argument that rehabilitation, while not an absolute prerequisite for relief in section 212(c) cases, is an important factor in the case of an applicant who has a criminal record." *See also Akrap*, 966 F.2d at 273 (noting BIA's consideration of evidence of rehabilitation in deciding issue of outstanding equities). While the BIA need not "write an exegesis on every contention," *Becerra–Jimenez v. INS*, 829 F.2d 996, 1000 (10th Cir.1987), its opinion must reflect that "it has heard and thought and not merely reacted." *Id.* Indeed, in *Vergara–Molina*, we affirmed the BIA even though it never explicitly used

the word "rehabilitation" because we believed that its opinion, assessed as a whole, demonstrated that it had assessed most of the activities that constituted the petitioner's efforts at rehabilitation. *See Hazzard v. INS*, 951 F.2d 435, 438–39 (1st Cir.1991) (BIA "considered all relevant factors" despite making no explicit or implicit finding as to rehabilitation"). *Cf. Diaz–Resendez v. INS*, 960 F.2d 493, 498 (5th Cir.1992) ("We remain unpersuaded that the Board 'actually considered' and 'meaningfully addressed' all of the factors regarding rehabilitation.").

Here, however, while acknowledging that "[t]he exercise of discretion in a particular case necessarily requires consideration of all facts and circumstances involved" and that "genuine rehabilitation" is a factor that must be considered in making that assessment, the BIA specifically declined to consider rehabilitation, apparently because assessment of the other factors had not shown unusual or outstanding equities. BIA decision at 2, 3, 5. In its brief before this court, the INS laconically defends the BIA's methodology with a sole footnote.[4] Yet, in its brief in *Vergara–Molina*, it acknowledged that the BIA was obliged to consider rehabilitation.[5]

A court of appeals "does not have the authority to determine the weight to afford to each factor." *Cordoba–Chaves*, 946

---

**4.** "Since the Board found that Mr. Akinyemi did not present outstanding equities, it did not—and did not need to—reach the issue of his rehabilitation. A.R. 6, *citing Matter of Marin*, 16 I & N Dec. 581 (BIA 1978). Accordingly, respondent does not address it." Appellee's Br. at 25 n. 19.

**5.** According to that brief,
the Board opinion expressly stated that rehabilitation was a factor to be weighed in this case. It did not indulge in a rehash of the petitioner's evidence on this point, or find it necessary to decide whether or not petitioner had in fact been rehabilitated, as he claims. Instead the Board held that even evidence of rehabilitation would not be enough to offset the evidence of his years of drug dealing. In short, the Board did not ignore evidence of rehabilitation in this case. It simply suggested that, as a factor, rehabilitation may not be enough to overcome very negative factors in an alien's record—such as petitioner's multiple detected and undetected drug crimes.

Petitioner labors under a delusion that the Board was required not only to consider the issue of rehabilitation which he presented, but also (1) to summarize and discuss his evidence on the issue, and (2) to write a detailed analysis of the probative value of the evidence both in fact and law. *See* Petitioner's Brief at 14–15. An administrative agency issuing a discretionary decision has no obligation to do this. Where the Board meaningfully addresses an alien's claim for discretionary relief in its total context, "[i]t has no duty to write an exegesis on every contention. What is required is merely that it consider the issues raised, and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." *Osuchukwu v. INS*, 744 F.2d 1136, 1141–42 (5th Cir.1984), *quoted in Luciano–Vincente v. INS*, 786 F.2d 706, 708–09 (5th Cir.1986).
Appellee's Br. in *Vergara–Molina* at 13–14.

F.2d at 1246 (citing *Garcia–Lopez v. INS*, 923 F.2d 72, 74 (7th Cir.1991)); *see INS v. Rios–Pineda*, 471 U.S. 444, 452, 105 S.Ct. 2098, 2103, 85 L.Ed.2d 452 (1985); *Ayala–Chavez v. INS*, 944 F.2d 638, 642 (9th Cir. 1991). However, we do have the obligation to ensure that a Board determination has not inexplicably departed from established policies or rested on an impermissible basis. *Cordoba–Chaves*, 946 F.2d at 1246 (citing *Bal v. Moyer*, 883 F.2d 45, 46 (7th Cir. 1989)). Here, we have such a deviation. Accordingly, the Board must reevaluate the case and consider specifically the petitioner's evidence with respect to rehabilitation.

### Conclusion

The petition for review is granted and the case is remanded to the Board for further proceedings consistent with this opinion.

PETITION GRANTED, CASE REMANDED.