Manuel ESPINOZA, Petitioner,

v.

**IMMIGRATION AND NATURALIZATION SERVICE,**
Respondent.

No. 91–3346.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 2, 1992.

Decided April 22, 1993.

Robert E. Lehrer, Legal Assistance Foundation of Chicago, Susan Compernolle, Federico J. Guzman, Legal Assistance Foundation, Douglas Schoppert (argued), Coursey & Schoppert, Chicago, IL, for petitioner.

William J. Howard, David J. Kline, William P. Barr, Dept. of Justice, Office of Immigration Litigation, Washington, DC, A.D. Moyer, I.N.S., Chicago, IL, Allen W. Hausman (argued), Office of Immigration Litigation, Civ. Div., Washington, DC, for respondent.

Before POSNER and COFFEY, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

COFFEY, Circuit Judge.

Manuel Espinoza appeals the Board of Immigration Appeals' ("BIA" or "Board") refusal to grant him a discretionary waiver of deportation under 8 U.S.C. § 1182(c). We vacate the decision of the BIA and remand the case to the BIA for further proceedings.

## I. BACKGROUND

Espinoza was charged with delivering cocaine on five separate occasions in 1987 and 1988, and was charged with possession of cocaine on two other occasions in 1987 and 1988. On January 23, 1989, Espinoza was convicted of five counts of delivery of cocaine as alleged in the criminal informations and one count of possession of co-

caine in violation of Chapter 56½, § 1401 of the Illinois Revised Statutes. Espinoza was sentenced to concurrent eight-year terms at the Logan Correctional Center in Chicago, Illinois for each of his cocaine convictions. Espinoza is a native and citizen of Mexico who entered the United States in 1971 at the age of six, and completed grammar school and attended high school through the tenth grade in the United States. Espinoza testified that he has remained in the United States since 1971, but traveled to Mexico on four or five occasions during 1985–86 and 1988.

On the early morning of March 17, 1984, Espinoza sustained a bullet wound in his spinal cord after intervening in a bar fight; the bullet left him paralyzed from the chest down. Espinoza is confined to a wheelchair and requires assistance to perform simple daily tasks. Espinoza's father, mother, three brothers, and five sisters reside in Chicago, Illinois. According to the record, three of his sisters are citizens of the United States, while his parents and other siblings are permanent residents of this country. Espinoza and his girlfriend, Nicolette Colon, have a son, Gregorio Espinoza, who was born on November 23, 1984 in Chicago, Illinois. Colon testified that she and Gregorio would probably not accompany Espinoza if he were deported to Mexico because she has lived in Chicago since birth and her family and employment ties require that she remain in Chicago to support Gregorio.

Espinoza testified at the deportation hearing that shortly after his incarceration he enrolled in a college degree program offered at the Logan Correctional Institute and received an associate degree in general studies from MacMurray College in March 1991. Espinoza stated that upon release from prison, he intends to pursue a career in accounting. Because he was trained only in the English language, and not in the Spanish language, during his elementary and high school education, Espinoza is of the opinion that his ability to pursue a career in accounting in Mexico would be significantly restricted. Espinoza testified that deportation to Mexico would also interfere with and limit his physical rehabilitation program because the medical services and facilities in the United States are superior to those in Mexico.

On September 22, 1989, the Immigration and Naturalization Service ("INS") issued an Order To Show Cause, alleging that Espinoza was subject to deportation under 8 U.S.C. § 1251(a)(4)(B) and § 1251(a)(11) because of his state court convictions for five counts of delivery of cocaine and one count of possession of cocaine. Espinoza enrolled in the prison's Narcotics Anonymous drug rehabilitation program in November 1990, after the INS had commenced deportation proceedings against him. Espinoza stated that he plans to continue in Logan Correctional Center's drug treatment program until his release from prison.[1]

During his deportation hearing, Espinoza stated that he had applied for a waiver from deportation under § 212(c) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(c). The Immigration Judge ("IJ") granted Espinoza a § 212(c) waiver after finding that his enrollment in a drug rehabilitation program since November 1990 and his educational efforts in prison demonstrated unusual and outstanding equities warranting such relief. The INS appealed Espinoza's § 212(c) waiver to the BIA. The BIA reversed the IJ's granting of Espinoza's waiver of deportation and ordered him to return to Mexico. Espinoza appeals.

## II. STANDARD OF REVIEW

We have jurisdiction to review all final orders of deportation under 8 U.S.C. § 1105a(a), and review the decision of the BIA for an abuse of discretion. *Akinyemi v. I.N.S.*, 969 F.2d 285, 288 (7th Cir.1992). Our review is "limited to whether the [BIA's] discretion was actually exercised and whether it was exercised in an arbi-

---

1. The petitioner received a Certificate of Accomplishment for his participation in the NA drug rehabilitation program in February 1991.

trary or capricious manner." *Id.; Cordoba–Chaves v. I.N.S.*, 946 F.2d 1244, 1246 (7th Cir.1991). We may reverse a discretionary decision of the BIA only if it "was made without a rational explanation, ... inexplicably departed from established policies, or rested on an impermissible basis." *Akinyemi*, 969 F.2d at 288 (quoting *Cordoba–Chaves*, 946 F.2d at 1246); *see also Bal v. Moyer*, 883 F.2d 45, 46 (7th Cir.1989). The BIA must set forth its reasons for denying relief after weighing all of the factors, both favorable and unfavorable, to the petitioner's case. *Vergara–Molina v. I.N.S.*, 956 F.2d 682, 685 (7th Cir.1992); *Garcia–Lopez v. I.N.S.*, 923 F.2d 72, 74 (7th Cir.1991).

## III. SECTION 212(c) WAIVER OF DEPORTATION

■■■■ Section 212(c) of the Immigration and Nationality Act provides in relevant part:

"[a]liens lawfully admitted for permanent resident [sic] who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to [certain specified grounds of exclusion]."

8 U.S.C. § 1182(c). Section 212(c) of the Act permits the Attorney General (or his delegate, the BIA) to waive the deportation of aliens who have been lawful permanent residents for seven years and whose deportation has been ordered for certain specified reasons, including criminal convictions. *See Cordoba–Chaves*, 946 F.2d at 1247. However, statutory eligibility does not automatically entitle the alien to a waiver of deportation. *Akinyemi*, 969 F.2d at 288. The grant of a § 212(c) waiver of deportation is within the discretion of the BIA. *Id.* In the exercise of discretion, the BIA balances the social and humane considerations in the alien's favor ("positive factors") against any "adverse factors" that demonstrate his or her undesirability as a permanent resident in the United States. *See Akinyemi*, 969 F.2d at 288; *Cordoba–*

*Chaves*, 946 F.2d at 1247. Factors that are considered favorable to the alien include: "[F]amily ties within the United States, residence of long duration in this country (particularly when the inception of residence occurred while the respondent was of young age), evidence of hardship to the respondent and family if deportation occurs, service in this country's Armed Forces, a history of employment, the existence of property or business ties, evidence of value and service to the community, *proof of a genuine rehabilitation if a criminal record exists*, and other evidence attesting to a respondent's good character."

*Cordoba–Chaves*, 946 F.2d at 1247 (citation omitted) (emphasis added). Examples of factors that are adverse to an alien's application for a § 212(c) waiver of deportation are: "1) The nature and underlying circumstances of the exclusion ground at issue; 2) any additional significant violations of this country's immigration laws; 3) the nature, recency and seriousness of a criminal record; and 4) any other evidence of an alien's bad character or undesirability as a permanent resident." *Id.* One or more of these factors may ultimately be relied upon to determine whether relief under § 212(c) should be granted or denied. *Cordoba–Chaves*, 946 F.2d at 1247. When the grounds for deportation are based upon the petitioner's criminal activity, a heightened showing of favorable evidence is required to demonstrate unusual or outstanding equities to offset the grounds for petitioner's deportation. *See Cordoba–Chaves*, 946 F.2d at 1247.

### A. Administrative Proceedings

#### 1. The Immigration Judge

The IJ found Espinoza's convictions for trafficking in cocaine to be serious drug offenses, thus requiring that Espinoza establish unusual and outstanding equities in order that he might demonstrate that he is deserving of § 212(c) relief from deportation. The IJ stated there were four factors in Espinoza's favor. Initially, the IJ recognized that at the time of the deportation hearing Espinoza had resided in the United

States for approximately twenty years and had been a permanent resident for approximately ten years (1981–1991).[2] Second, the IJ considered Espinoza's confinement to a wheelchair to be an important equity, in that his lack of mobility would make it more difficult for him to adapt to life in Mexico. Third, the IJ found Espinoza's close family ties to his parents, eight siblings, and son, all living in the Chicago area, to be an equity in his favor. In addition, the IJ noted that Espinoza's parents and his girlfriend, Nicolette Colon, testified that they would assist Espinoza upon his release from prison. The IJ referred to the testimony of Espinoza's mother concerning how she and her husband have gone to the expense of modifying the bathroom in their home in light of Espinoza's paraplegic condition. Fourth, the IJ found that Espinoza has shown rehabilitative potential since he (a) enrolled in a drug rehabilitation program, (b) received a Certificate of Accomplishment for participation in it, (c) completed an associate degree in general studies, and (d) stated that he intends to continue his education toward a career in accounting after his release from prison. Based on these factors, the IJ concluded that Espinoza had established sufficient unusual and outstanding equities to offset his serious crimes and granted him a § 212(c) waiver from deportation.

### 2. The Board of Immigration Appeals

The INS appealed the IJ's decision to the BIA. The BIA's decision stated that it considered the petitioner's nearly 20 year residence in the United States, his close family ties in this country, his degree in general studies, his participation in a drug rehabilitation program, and the fact that he

has provided a portion of his monthly social security disability payments to his son to be outstanding equities in his favor. The BIA, like the IJ, noted that Espinoza's family would continue to assist him and that his parents have modified the bathroom in their home to accommodate his special needs. Further, the BIA found that Espinoza presented evidence that due to the nature of his physical handicap as well as his "lack of employment training," he would have difficulty residing in Mexico with his grandparents who are retired and are dependent on Espinoza's uncle for financial assistance.

In view of his cocaine convictions, the BIA required a "firm showing of rehabilitation" from Espinoza to conclude that he warrants § 212(c) relief. The BIA recognized that Espinoza enrolled in a drug rehabilitation program and earned an associate level college degree while in prison, but also found that he delayed seeking entrance into the prison's drug rehabilitation program for nearly two years. The BIA stated that Espinoza explained his delay "in enrolling in the drug rehabilitation program was due to a scheduling conflict between the program and his academic courses." The BIA reasoned that Espinoza's explanation for delaying in seeking rehabilitation as a scheduling conflict was unconvincing "in view of the length of his delay ... and the fact that his deportation proceedings had commenced before he finally enrolled in the [drug] program."[3] Relying on these two reasons, the BIA found that "there was insufficient evidence in the record to show genuine rehabilitation on the part of [Espinoza]...." The BIA balanced Espinoza's positive factors

---

**2.** Although the IJ did not refer to the years Espinoza has spent in prison after being convicted for delivering and possessing cocaine, we note he has been incarcerated since January 1989.

**3.** The BIA noted in the section of its opinion discussing Espinoza's lack of genuine rehabilitation "that although the respondent testified that he regrets his involvement in drugs, he admitted that he continued to use cocaine after he was arrested and charged with drug trafficking offenses." It is impossible to determine from its

decision whether the BIA considered Espinoza's post-arrest drug use an additional reason to deny him a deportation waiver. The INS' brief implicitly interprets the BIA decision as *not* relying on this factor: the brief refers to Espinoza's post-arrest drug use only once, in a footnote to its statement of facts, and attaches no significance to it whatever. Because the BIA's opinion does not focus on this issue, we, following the INS, conclude that Espinoza's post-arrest drug use was not a factor in the decision to deny him a deportation waiver.

against his cocaine convictions and what they determined to be his "lack of genuine rehabilitation", concluded that Espinoza did not warrant a recommendation for favorable relief under § 212(c), and ordered him deported to Mexico.

## B. *Analysis*

 We may reverse the BIA's decision if it "was made without a rational explanation, . . . inexplicably departed from established policies, or rested on an impermissible basis." *Akinyemi*, 969 F.2d at 288. The BIA rested its decision that Espinoza did not establish genuine rehabilitation in part on the fact that he waited almost two years before starting the drug program. Espinoza testified at the deportation proceeding:

> "Upon my incarceration, I (sic) first achievements I wanted to make was school, I wanted to get some college degrees and I (indescribable) *and for this drug program in the beginning* but every time that the drug program was offered it was . . . it was always interfering with the school and I really wanted to get school out of the way. I really wanted to receive this certificate [from school], I didn't want nothing in my way to get my certificate and *finally I made room for my drug program and then . . . now I put aside . . . now I make sure that I don't have nothing interfere with that, with them hours for drug program* and just go to school. I have to do both, go to school and go to drug program."

(emphasis added). Espinoza argues that his testimony reflects that a continuing scheduling conflict between the college courses and the drug rehabilitation program was an important factor in his failure to enter the drug rehabilitation program before November 1990. But, according to Espinoza, there were other factors that contributed to the delay in his enrollment in the drug program, and he argues that he was not given the opportunity to present this evidence to the IJ which would have buttressed his assertion that he intended to enter drug rehabilitation when he was first incarcerated. At the deportation hearing,

when his attorney asked Espinoza, "About what month did you first apply or put in an application to do the drug rehabilitation," the IJ interjected:

> "Just so that we can put this aside here, I don't think it's important, *I won't regard it as important in my decision when the respondent started the program,* given the date of incarceration and the date of . . . day he started, November 1990. *I don't think it's significant, it will have no impact on what I decide.*"

(emphasis added). As a result, the record before us fails to include the reasons why Espinoza allegedly waited nearly two years to begin drug rehabilitation or when he first sought entry into the drug program. In *Shahandeh–Pey v. INS*, 831 F.2d 1384, 1388–89 (7th Cir.1987), the Immigration Judge precluded the petitioner, who was seeking § 212(c) relief, from presenting evidence in support of his application such as family ties, employment history, and evidence of genuine rehabilitation. The *Shahandeh* court reversed and remanded the BIA's decision to deport the petitioner, reasoning that when excluded evidence, if proven, *has the potential* for affecting the ultimate outcome of the case, then the BIA abuses its discretion in ordering deportation. *Id.* The "ultimate outcome" of Espinoza's § 212(c) application may have been affected if the deportation hearing explored the circumstances surrounding the timing of Espinoza's entry into the drug program, because the petitioner may have been able to introduce evidence that he attempted to enter the drug rehabilitation program immediately after he began serving his prison sentence, or that the program was unavailable to him until the time he entered. Such evidence could have rebutted the INS' argument that Espinoza was responsible for the delay in starting drug rehabilitation. Therefore, we conclude that the BIA had an incomplete record before it when it considered Espinoza's reasons for waiting until November 1990 to start drug rehabilitation.

The INS argues that the IJ did not preclude Espinoza from presenting evidence of

his reasons for waiting to start the drug treatment program until November 1990 because the IJ did not make an evidentiary ruling preventing any testimony on this issue. The INS contends that Espinoza's counsel made the tactical decision to avoid placing specific reasons in the record to explain why Espinoza delayed in beginning drug rehabilitation. From our review of the record, we consider it reasonable for Espinoza and his counsel to have relied on the IJ's comment that specific evidence of when he first sought entry into the drug program was insignificant. In reliance on the IJ, who ruled in his favor, Espinoza did not present any further reasons for waiting nearly two years to enter the drug program. Then, on review by the BIA, Espinoza was blind-sided by the ruling that he delayed enrolling in the drug program first, an issue the IJ had determined to be insignificant. Espinoza certainly is entitled to have an opportunity to make this potentially important evidence part of the record of the deportation proceeding.

■ We have a more fundamental problem with the BIA's reasoning. Assuming, *arguendo*, that the BIA was correct in finding that Espinoza chose to complete his academic work before enrolling in the drug program, we fail to see why that choice should be held against him in the deportation waiver analysis. Espinoza could have reasonably concluded that pursuing an education while in prison would be the best way to prepare himself to support his family and himself once he was released from prison. Moreover, the record clearly demonstrates that Espinoza both pursued his education and enrolled in drug rehabilitation while in prison. That he chose to do one first, and then the other, is not an appropriate reason to deny him a deportation waiver.

■ The BIA also found that Espinoza failed to establish genuine rehabilitation because he enrolled in drug treatment only after deportation proceedings had commenced against him. Based on this finding, the INS argues that the BIA was drawing an inference that Espinoza's sole motivation in participating in drug rehabili-

tation was to avoid deportation. As we discussed above, Espinoza was in effect barred from placing in evidence his explanation for not starting the drug program until after deportation proceedings commenced. Therefore, the BIA did not have a sufficient record to determine whether Espinoza's motivation to start drug treatment was to avoid deportation, or a genuine effort to cure his addiction to cocaine, or for other reasons. The BIA's finding that Espinoza enrolled in the drug program only to avoid deportation rests on nothing but speculation; not a scintilla of record evidence supports that conclusion.

■ Both the INS and Espinoza interpret the BIA's discussion of Espinoza's "scheduling conflict" as reflecting its view that Espinoza chose the college courses over the drug program, and that this choice demonstrates his lack of genuine rehabilitation. In its decision, the BIA stated that Espinoza's participation in *both* the college degree program and the drug rehabilitation program were outstanding equities in his favor. Nevertheless, the INS argues that it was "not unreasonable for the BIA to conclude that treatment for [his cocaine] addiction should have been petitioner's paramount concern, and that petitioner's decision to defer that treatment when forced to choose between it and college courses reflects his priorities." Espinoza responds to the INS' argument that he prioritized one program over the other by contending that "neither the INA nor the BIA's decisions even suggest, much less make it clear, that an alien convicted of drug offenses and seeking § 212(c) relief must, to prevail, *invariably give priority to participation in a drug rehabilitation program over all other legitimate objectives*, such as further education." (Petit.Br. at 27) (emphasis added). Furthermore, Espinoza argues that the BIA cannot point to any case law or statute where an alien's *simultaneous* participation in a college degree program and a drug rehabilitation program presented a conflict, requiring the alien to choose drug rehabilitation first before all other programs to demonstrate his genuine rehabilitation. The INS has failed to cite, and

we have been unable to discover, any statute, case law, or BIA decision that states Espinoza was required to enroll in drug rehabilitation first to the exclusion of all other programs in order that he might demonstrate his rehabilitation. Moreover, the order in which Espinoza participated in the college degree and the drug programs does not necessarily reflect his priorities because it is conceivable that Espinoza had good reason to believe that he had sufficient time during his incarceration to complete both programs. We note in this connection that Espinoza submitted to the IJ two letters from the Chairman of the prison drug rehabilitation program dated February 26, 1991 and May 30, 1991 praising his aggressive participation in Narcotics Anonymous. We are at a loss to understand why Espinoza's demonstrated success in drug rehabilitation did not outweigh his (according to the BIA) "delayed" entry into the program. Espinoza also testified that he would continue in the drug program until his release from prison, which was scheduled for January 21, 1993. We have recognized that when important evidence is lacking in the record, a remand to uncover this evidence is necessary to ensure "all aspects of the case be fully considered and that the board's decision reflect this deliberation." *Shahandeh–Pey*, 831 F.2d at 1388–89. "A decision that does not reflect ... consideration of important aspects of an individual's claim is one made, for all a reviewing court can know, 'without rational explanation.'" *Id.* at 1389; *see also Akinyemi*, 969 F.2d at 289–90; *Drobny v. I.N.S.*, 947 F.2d 241, 243, 246 (7th Cir.1991). We conclude that the BIA abused its discretion in relying on an incomplete record in its decision to deport Espinoza.

## IV. CONCLUSION

Espinoza is a paraplegic who has lived in the United States for over twenty years. His large family is here in the United States, and is ready to stand at his side and assist him in coping with his paralysis. He has testified that he sends much of his small income to his young son, who is also living in the United States. According to the record, Espinoza has by all indications made a sincere attempt to turn his life around since his incarceration, enrolling in academic classes and earning an associate's degree, and earning recognition for his aggressive participation in a drug rehabilitation program. He plans to work towards a career as an accountant. The record before us is lacking crucial evidence and we have grave doubts about the BIA's decision to deport Espinoza to Mexico, where his paralysis will be an even greater problem, while his family in the United States might well become wards of the government for lack of sufficient funds to support themselves. Espinoza, despite suffering from physical problems that would have overwhelmed less determined individuals, did not waste his time in prison, but instead earned an associate degree and was commended for his participation in a drug rehabilitation program. As we noted above, even if Espinoza did choose to pursue his education before beginning drug rehabilitation, his decision could very well have been grounded in a belief that gaining the means to support himself and his family was his most important priority. He could also have concluded that in prison drugs would not be available to him and therefore he could concentrate on his education first, or that his sentence was long enough for him to complete both programs before his release. Moreover, Espinoza, through no fault of his own, was never allowed to document in the record the circumstances which led him to enroll in the drug program when he did. The Board's denial of a deportation waiver to Espinoza was based on speculation unsupported by record evidence. Because the BIA abused its discretion in refusing Espinoza a waiver of deportation, the BIA's decision deporting Espinoza to Mexico is vacated and the case is remanded for further proceedings consistent with this opinion.

VACATED AND REMANDED.