Rafael PALACIOS–TORRES, Petitioner,

v.

**IMMIGRATION AND NATURALIZATION SERVICE,**
Respondent.

No. 92–2487.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 2, 1992.

Decided May 18, 1993.

Douglas Schoppert (argued), Coursey & Schoppert, Chicago, IL, for petitioner.

Fred Foreman, U.S. Atty., Office of the U.S. Atty., Crim. Div., Chicago, IL, Richard M. Evans, William J. Howard, David J. Kline, Ellen Shapiro, Dept. of Justice, Office of Immigration Litigation, Richard L. Thornburg, U.S. Atty. Gen., Office of the U.S. Atty. Gen., Washington, DC, A.D. Moyer, Samuel Der-Yeghiayan, I.N.S., Chicago, IL, Allen W. Hausman (argued), Office of Immigration Litigation, Civ. Div., Washington, DC, for respondent.

Before POSNER and COFFEY, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

FAIRCHILD, Senior Circuit Judge.

Petitioner Rafael Palacios–Torres challenges a final order of deportation, including a denial of discretionary relief from deportation under § 212(c) of the Immigration and Nationality Act, 8 U.S.C. § 1182(c). An immigration judge entered the order, saying that he believed rehabilitation is an important factor to consider, although not a prerequisite for granting § 212(c) relief and he found Palacios had not been rehabilitated. The Board of Immigration Appeals dismissed Palacios' appeal, and Palacios petitions for review of the BIA decision.

## I.

■ Palacios concedes that he is a resident alien and is deportable by reason of convictions for drug offenses. He fulfills the statutory requirements, as currently construed, for consideration of discretionary relief from deportation. See Akinyemi v. INS, 969 F.2d 285, 288 n. 3 (7th Cir.1992). Even where an applicant meets the statutory requirements under § 212(c), however, the Attorney General or his delegate must determine as a matter of discretion whether an applicant merits the relief sought, and the alien bears the burden of demonstrating that his application merits favorable consideration. Matter of Marin, 16 I & N Dec. 581 (BIA 1978); Matter of Buscemi, 19 I & N Dec. 628 (BIA 1988); Akinyemi, 969 F.2d at 288.

Decisions of the BIA, principally Matter of Marin, set out the framework for the Board's exercise of discretion, which requires a balancing of the social and humane considerations presented in an applicant's favor against the adverse factors evidencing his undesirability as a permanent resident. Matter of Marin, 16 I & N Dec. at 584. The BIA has articulated a list of relevant factors, both favorable and unfavorable, to be weighed in the context of a 212(c) application. The favorable factors include family ties within the United States, residence of long duration—particularly if it begins at a young age, evidence of hardship to the alien and his family if deportation occurs, service in this country's armed forces, a history of employment, existence of property or business ties, evidence of value and service to the community, proof of genuine rehabilitation if a criminal record exists, and other evidence attesting to the alien's good character—e.g., affidavits from family, friends and responsible community representatives. Id. at 584–85.

Factors deemed adverse to an applicant seeking 212(c) relief include the nature and underlying circumstances of the exclusion ground at issue, the presence of additional significant violations of this country's immigration laws, the existence of a criminal record—and if so the nature, recency, and seriousness of the offense, and the presence of other evidence indicative of the alien's bad character or undesirability as a permanent resident. Id. at 584. One or more of these adverse considerations may ultimately be determinative of whether section 212(c) relief is in fact granted in an individual case. Id.

"As the negative factors grow more serious, it becomes incumbent upon the applicant to introduce additional offsetting favorable evidence, which in some cases may have to involve unusual or outstanding equities." Id. at 585. Such a heightened showing is required when an alien has been convicted of a serious drug offense, particularly when it relates to the trafficking or sale of drugs. Id. at 586 n. 4. Although in its earlier decisions the Board stated that an alien with a criminal record "will ordinarily be required to make a showing of rehabilitation," the BIA

later took pains to make clear that rehabilitation is a factor to be considered, and not "an absolute prerequisite to a favorable exercise of discretion in every case involving an alien with a criminal record." *Matter of Edwards*, Int.Dec. 3134, 1990 WL 385757, 1990 BIA LEXIS 8 at *13 (BIA May 2, 1990). Rather, a section 212(c) applicant with a criminal conviction must be evaluated on a case-by-case basis, with rehabilitation a factor to be considered in the exercise of discretion. *Id.*

In a 1991 decision, the BIA indicated that it was not precluded from considering the lack of rehabilitation as an adverse factor. It phrased its conclusion in that case accordingly. "After balancing the respondent's equities ... against the adverse factor of his serious criminal conviction for the sale of a controlled substance, and our lack of confidence as to his rehabilitation, we conclude that he has not demonstrated that he warrants a favorable exercise of discretion." *Matter of Roberts*, 1991 WL 353515, 1991 BIA LEXIS 9.

■ We review the Attorney General's discretionary denials for an abuse of discretion. *Garcia–Lopez v. INS*, 923 F.2d 72, 74 (7th Cir.1991). "Our examination of the denial is limited to whether the discretion was actually exercised and whether it was exercised in an arbitrary or capricious manner. *Id.* (citing *Villanueva–Franco v. INS*, 802 F.2d 327, 329 (9th Cir.1986)); *Akinyemi v. INS*, 969 F.2d 285, 288 (7th Cir.1992). An abuse of discretion arises when a decision "was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group." *Hernandez–Patino v. INS*, 831 F.2d 750, 752 (7th Cir.1987) (quoting *Achacoso–Sanchez*, 779 F.2d 1260, 1265 (7th Cir.1985)); *Vergara–Molina v. INS*, 956 F.2d 682, 684 (7th Cir.1992).

## II.

Rafael Palacios–Torres is a 46–year–old native and citizen of Mexico. On June 16, 1988, Palacios pled guilty to three counts of delivery of a controlled substance, committed on March 26, 1987, April 8, 1987 and June 22, 1987, respectively. The first and second instances consisted of delivery of more than 10 but less than 15 grams of a substance containing cocaine. The third involved the delivery of more than 15 grams of heroin. An Illinois state court sentenced Palacios to three concurrent terms of four years. On May 21, 1990, Palacios was convicted on a fourth charge for possession of a controlled substance in December 1989, involving the knowing and unlawful possession of less than 15 grams of cocaine.

## III.

The Board first considered the favorable factors, as enunciated in *Matter of Marin, supra.* Palacios introduced evidence that he is married and has four children, all United States citizens. Palacios first entered the United States illegally in 1970, and he and his wife became lawful permanent residents in 1975 through petitions filed by their eldest children. Palacios has resided continuously in the United States since his arrival, returning to Mexico for brief vacations on three occasions, has been continually employed in this country and owns property here. Palacios owns no property and has little family remaining in Mexico. The Board found Palacios' length of residence, steady employment history and, most importantly, his strong family ties in the United States and lack of ties to Mexico to constitute the "unusual and outstanding equities required as a threshold showing" of waiver where an applicant has been convicted of a drug-related offense. The Board noted that Palacios' strongest equity constituted his influence and guidance over his children, particularly his eldest son.

On the question of rehabilitation, the Board evidently considered the entire record and the decision of the Immigration Judge who heard the testimony. Palacios had testified that although he had driven the person who sold the drugs to the place where the transactions occurred and was present when the transfers took place, he did not ask and did not know the purpose of the trip. He testified that he pled guilty on the advice of his lawyer and not because he was guilty. The Immigration Judge did not consider the

testimony credible, and concluded that he "simply has not reformed or been rehabilitated. He's still trying to rationalize his behavior. Consequently I find that he hasn't been rehabilitated since his conviction."

The Board wrote:

> We cannot conclude from the evidence of record, however, that the immigration judge erred in his balancing of the equities and the negative factors in the respondent's case. The respondent has participated in drug-related crimes on more than one occasion, and the final offense took place some years after his arrest for the first three such crimes. This fact makes difficult a finding that the respondent had experienced any remorse or rehabilitation up to the time of his last arrest. In addition, the respondent's statements at the deportation hearing do not convince us that he has accepted his responsibility for those offenses despite the other evidence of rehabilitation in the record. This applies in similar fashion to the respondent's past substance and alcohol abuse. For these reasons, we must reluctantly conclude that the balance of the equities and negative factors does not tip in the respondent's favor and dismiss his appeal.

The Board had additionally considered Palacios's testimony that he had experimented with marijuana approximately once every one to three months between 1975 until his arrest in 1987, that he had consumed cocaine on five to six occasions in 1985, and that he had consumed alcohol once or twice a week and had "blacked out" on a number of occasions. Although the Board believed Palacios' attendance at Alcoholics Anonymous meetings once a week was "a step towards correcting an apparent problem with alcohol consumption," the Board found that "a showing that [he] recognizes the gravity of his condition is not readily apparent from the record[.]"

Palacios also presented evidence that he had received the statutory minimum sentence and that, during his incarceration at Illinois River Correctional Center, he was classified at Grade A—the highest disciplinary rate, that he earned good time credits—moving his projected release date up to September 18, 1991, and that he had enrolled in pre-G.E.D. classes. The Board apparently did not find this evidence persuasive on the issue of rehabilitation.

## IV.

Palacios points out that the BIA has not articulated the criteria of rehabilitation. This failure, he argues, denies him fair notice of the type of evidence he must bring forth in order to demonstrate rehabilitation. He additionally asserts that the Board's failure to articulate a comprehensible standard for rehabilitation allows the Board to pick and choose from a number of undisclosed factors, which would result in the inconsistent application of agency standards. The Board concedes that, indeed, there is no agency opinion that outlines criteria for rehabilitation. The Board contends that it is not required to do so because 212(c) relief is based on its discretionary assessment of the facts and circumstances of a given case.

In this context, "rehabilitation" has two focuses. One is the restoration of an individual to a drug free way of life. The other is more general, reformation or restoration to a way of life where future criminal conduct is unlikely. In both of these areas, achievement of rehabilitation is scarcely a readily determinable fact in the ordinary sense and the Board necessarily makes a judgment call, involving an estimate or prediction of an individual's future conduct. To make this prediction, the Board has taken into consideration evidence of the nature and seriousness of the crime, repeat offenses, an applicant's remorse and admission of guilt, enrollment in a drug-treatment program or other indicia that an applicant is no longer addicted to drugs, and an applicant's candor in answering questions at the deportation hearing—that is, his credibility.[1] This evi-

---

1. *See e.g., Matter of Buscemi, supra* (no showing of rehabilitation where applicant was convicted of serious drug offense, perpetrated a second offense while on probation, had probation revoked, and gave contradictory testimony at hearing regarding his ability to remain free from drugs); *Matter of Edwards, supra* (no showing of rehabilitation where applicant convicted of a serious drug offense, offenses spanned over a ten year period, and applicant continued to use

dence is relevant to the ultimate question of whether an applicant is at risk of recidivism. The Board's decisions on the subject are consistent with at least one dictionary definition of "rehabilitation"—"the process of restoring an individual (as a convict, mental patient, or disaster victim) to a useful and constructive place in society through some form of vocational, correctional, or therapeutic retraining or through relief, financial aid or other reconstructive measure." Webster's Third New International Dictionary 1914 (1981). We do not believe the concept of rehabilitation as applied by the Board is so vague as to deny an applicant notice of the type of evidence relevant to a successful showing.

■ In our opinion, the Board's unwillingness to find rehabilitation (either, apparently, as to likelihood of criminal behavior or drug abuse) was not arbitrary or capricious, nor did it lack a rational basis. The Board indicated that it accorded some degree of deference to the decision of the Immigration Judge, who saw and heard the witnesses and did not believe Palacios. Such deference on issues involving credibility is surely not an abuse of discretion. *Ortiz–Salas v. INS*, 992 F.2d 105, 108 (7th Cir.1993).

■ We have been concerned whether there is a significant inconsistency between the Board's conclusion that certain favorable factors "constitute the requisite unusual and outstanding equities required as a threshold showing ... given his several drug-related offenses" and the negative weight it ultimately gave to its lack of persuasion that Mr. Palacios had been rehabilitated. *Marin* lists "proof of a genuine rehabilitation" as a favorable factor, p. 585, and says that the absence of a particular favorable matter is not an "adverse" factor, p. 587. In the case before us, the Board found unusual and outstanding equities, but then counted absence of rehabilitation as a negative factor. In addition, although in *Marin* the Board said "applicants ... who have criminal records will ordinarily

be required to make a showing of rehabilitation," p. 588, the Board later referred to this language and said:

> This language has been interpreted in some cases as though a clear showing of reformation is an absolute prerequisite to a favorable exercise of discretion in every case involving an alien with a criminal record. To the extent that the language may be read as creating an absolute prerequisite to a favorable exercise of discretion, we withdraw from it. Rather, § 212(c) applications involving convicted aliens must be evaluated on a case-by-case basis, with rehabilitation a factor to be considered in the exercise of discretion.

*Matter of Edwards*, 1990 BIA LEXIS at 13. We note, however, that the Board has on occasion considered lack of or doubtful rehabilitation as a negative factor, to be weighed against the sum of other factors deemed favorable. *See Matter of Roberts, supra.*

The board's choice in this case to sum up the favorable factors (not including rehabilitation) as unusual and outstanding equities and to treat lack of rehabilitation as an adverse factor which along with the seriousness of Palacios' offenses, outweighs the unusual and outstanding equities, rather than to decide that in the absence of rehabilitation the favorable factors did not amount to unusual and outstanding equities, seems only a difference in sequence of the analysis and not a substantially different calculation. We do not consider this treatment as an inexplicable departure from established policies, or even as sufficiently questionable to remand for clarification.

## V.

■ While Palacios' appeal was pending, he submitted new evidence, including his release on parole and a favorable evaluation by his parole officer, and evidence that he had resumed employment, was attending Alcoholics Anonymous meetings, and was supporting

---

drugs while on parole); *Matter of Roberts*, Int. Dec. 3148 (BIA 1991) (no showing of rehabilitation where applicant convicted of a serious drug offense, expressed no remorse, did not enroll in a drug counselling program and testified that he had been "set up" for the crimes for which he

was convicted); *Matter of Coelho*, Int.Dec. 3172 (BIA 1992) (no showing of rehabilitation where applicant unwilling to give straightforward answers at hearing, expressed no remorse, and was unwilling to provide details regarding cocaine transactions).

his family. He asked the Board in the alternative to remand the record to the Immigration Judge for consideration of the additional evidence. The Board denied the motion, concluding that even if this evidence were part of the record on appeal, the Board would nevertheless uphold the Immigration Judge's decision. The Board cited *Matter of Coelho,* Int.Dec. 3172 (BIA 1992) (evidence in support of motion to remand must be of such nature as to mandate different result).

Palacios relies on a decision of the Board granting remand where an alien showed he had been released on parole while his appeal was pending. *Matter of Salmon,* 16 I & N 734 (BIA 1978), and argues that the cases cannot be distinguished.

We find no abuse of discretion in the Board's decision that remand would be unproductive notwithstanding its ordering remand in another case where the alien had been paroled during his appeal.

The petition for review is DENIED.