65 F.3d 170
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Eduardo GONZALEZ-RIVAS, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 94-1898.
 United States Court of Appeals, Seventh Circuit.
 Argued Aug. 1, 1995.
Decided Aug. 24, 1995.
 
 Before POSNER, EASTERBROOK and ROVNER, Circuit Judges.
 
 ORDER
 
 1
 Eduardo Gonzalez-Rivas, a Mexican national who has been ordered deported because of a drug-selling conviction, appeals the decision of the Board of Immigration Appeals (Board) that refused to grant him a discretionary waiver of deportation under section 212(c) of the Immigration and Nationality Act, 8 U.S.C. Sec. 1182(c). Gonzalez argues that the Board abused its discretion and denied him due process of law because it did not adequately take into account evidence of Gonzalez's rehabilitation. We deny the petition for review and affirm the order of deportation.
 
 I. Background
 
 2
 In July 1971, Eduardo Gonzalez-Rivas entered this country as a lawful permanent resident at the age of thirty-six. He married and lived in Texas until 1975, when he left his wife and moved to Silvis, Illinois, where his brother lived. Other than a sister in California, Gonzalez's four other siblings reside in Mexico.
 
 
 3
 In early 1985, Gonzalez worked as a bartender at the Latina Restaurant in East Moline, Illinois, and was approached by a drug-dealer, Alberto Aguirre, who asked him if he was interested in selling drugs; Gonzalez refused at that time but Aguirre left him his phone number. Approximately two or three months later, two men, one of whom was an undercover police officer, approached Gonzalez in the restaurant and asked if he had any drugs to sell; Gonzalez said he did not. The men returned a second time and Gonzalez again refused. They returned a third time and Gonzalez admitted he might be able to procure drugs for them. Calling the number Aguirre had left for him, Gonzalez obtained and sold cocaine to the two men. Gonzalez made a second delivery, but on October 25, 1985, attempting a third delivery, he was arrested.
 
 
 4
 Released the next day on a recognizance bond, Gonzalez agreed to help the police. The police placed a wire-tap on Gonzalez's phone and fitted him with a hidden eavesdropping device. That day, Gonzalez spoke with Aguirre and consummated a drug deal, which was recorded by the police. Aguirre was arrested and Gonzalez testified against him at trial. Before the immigration judge, Gonzalez testified that his life was in danger as a result of these actions.
 
 
 5
 At this point, Gonzalez was still on bond, pending his own criminal charges, and was required to report once a week to a court officer. However, in July 1986, Gonzalez left Illinois and travelled to Mexico to be with his ailing parents. Gonzalez claimed that he intended to return to Illinois within a week, but that his parents were sicker than he expected. Gonzalez's father subsequently died in September 1986. Gonzalez stayed in Mexico for a total of 11 months before returning to the United States. However, instead of returning to Illinois, Gonzalez went to California and stayed with his sister, who he had not seen in many years. He stayed with his sister for ten months until, on the advice of a Catholic priest, he turned himself in to local authorities and was returned to Illinois.
 
 
 6
 Gonzalez plead guilty to two counts of delivery of less than 30 grams of cocaine, in violation of Ill.Rev.Stat. ch. 56.5, Sec. 1401(b)(2), and was sentenced in July 1988 to four years in the Illinois Department of Corrections. There were no proceedings regarding violations of his conditions of bond. Gonzalez was released on parole in January 1990, but was taken into custody by the Immigration and Naturalization Service (INS).
 
 
 7
 INS commenced deportation proceedings pursuant to 8 U.S.C. Sec. 1251(a)(11), because of his conviction for a drug offense. Gonzalez conceded deportability but moved for a discretionary waiver pursuant to section 212(c) of the Immigration and Nationality Act, 8 U.S.C. Sec. 1182(c). A deportation hearing was held and Gonzalez presented affidavits and witnesses to testify as to his good character, rehabilitation, current employment, and the emotional hardship that would be inflicted upon him and his brother's family, near whom he lived in East Moline, if he should be deported. The immigration judge denied Gonzalez's application, concluding that Gonzalez had not demonstrated unusual or outstanding equities in his behalf, as required for a serious drug offender. Gonzalez appealed to the Board of Immigration Appeals.
 
 
 8
 Although the Board found that "[Gonzalez's] residence alone constitutes an outstanding equity," (Agency R. at 3), it agreed with the immigration judge's ultimate conclusion that Gonzalez did not warrant discretionary relief, stating "[w]e find that the immigration judge's decision accurately reports the favorable equities and adverse factors, and [we] incorporate his findings herein." Id. The Board also provided additional reasoning for the denial:
 
 
 9
 Although the respondent has been a lawful permanent resident for over 20 years, he did not enter the United States as a young child. He was a 36-year-old-man, fully accultured into Mexican society, and to date speaks spanish fluently. He still has significant family ties in Mexico. He has also failed to demonstrate that anyone in the United States relies exclusively on him for financial support. He has no children, and testified that he has not communicated with his wife since 1975 and does not know if she has obtained a divorce from him. While we acknowledge that respondent's deportation may cause emotional hardship for his brother's family, it is an unfortunate consequence brought upon exclusively by respondent's criminal behavior. Consequently, in balancing the favorable equities in respondent's behalf against the serious adverse factors of record, we find that the respondent is not worthy of section 212(c) relief as a matter of discretion.
 
 
 10
 Id. at 4. Gonzalez appeals.
 
 II. Analysis
 
 11
 Pursuant to 8 U.S.C. Sec. 1105a(a)(1), the court has jurisdiction to review final deportation orders of the Board of Immigration Appeals. Although Gonzalez has filed a motion to reopen the order of deportation with the Board, that motion does not defeat appellate jurisdiction in this case. Rhoa-Zamora v. INS, 971 F.2d 26, 32-33 (7th Cir.1992); Leal-Rodriguez v. INS, 990 F.2d 939, 948 n. 11 (7th Cir.1993).
 
 
 12
 Aliens who have been lawful permanent residents for seven years and whose deportations are based on certain specified grounds are statutorily eligible to apply for Sec. 212(c) relief. Dashto v. INS, No. 94-2166, slip op. at 8 (7th Cir. July 11, 1995).[1] Once an alien is deemed eligible, the Attorney General may grant a waiver of exclusion as a matter of discretion. Cortes-Castillo, 997 F.2d at 1202.
 
 
 13
 In exercising that discretion, the Attorney General (or her designate, the Board) must balance the social and humane considerations in the alien's favor against any adverse factors that demonstrate his undesirability as a permanent resident in the United States. Akinyemi v. INS, 969 F.2d 285, 288 (7th Cir.1992). "[T]he alien bears the burden of demonstrating that his application warrants favorable consideration." Dashto, slip op. at 9 (quoting Palacios-Torres v. INS, 995 F.2d 96, 97 (7th Cir.1993)).
 
 The factors favoring relief include:
 
 14
 [F]amily ties within the United States, residence of long duration in this country (particularly when the inception of residence occurred while the respondent was of young age), evidence of hardship to the respondent and family if deportation occurs, service in this country's Armed Forces, a history of employment, the existence of property or business ties, evidence of value and service to the community, proof of a genuine rehabilitation if a criminal record exists, and other evidence attesting to a respondent's good character (e.g. affidavits from family, friends, and responsible community representatives).
 
 
 15
 Henry, 8 F.3d at 432 (quoting In re Marin, 16 I. & N.Dec. 581 (BIA1978)). "Adverse factors include the nature and underlying circumstances of the exclusion ground at issue, any additional significant violations of this country's immigration laws, the nature, recency, and seriousness of a criminal record, and any other evidence of an alien's bad character or undesirability as a permanent resident." Groza, 30 F.3d at 814. A heightened showing of favorable evidence involving unusual or outstanding equities is required when the alien has been convicted of a serious drug offense, especially one relating to trafficking or sale of drugs. Cortes-Castillo, 997 F.2d at 1202-03.
 
 
 16
 "We review the Board's decision for an abuse of discretion; we may reverse only if the decision 'was made without rational explanation, ... inexplicably departed from established policies, or rested on an impermissible basis.' " Henry, 8 F.3d at 432 (quoting Cortes-Castillo v. INS, 997 F.2d 1199, 1203 (7th Cir.1993)). "The Board abuses its discretion when it fails to weigh important factors or neglects to state its reasons for denying relief." Cortes-Castillo, 997 F.2d at 1203 (citing Vergara-Molina v. INS, 956 F.2d 682, 685 (7th Cir.1992)).
 
 
 17
 "When an alien with a criminal record requests relief under section 212(c), rehabilitation is an important factor for the Board to consider in the exercise of its discretion." Cortes-Castillo, 997 F.2d at 1203 (citing Cordoba-Chaves v. INS, 946 F.2d 1244, 1247 (7th Cir.1991)). See Akinyemi, 969 F.2d at 289 ("there can be no argument that rehabilitation, while not an absolute prerequisite for relief in section 212(c) cases, is an important factor in the case of the applicant who has a criminal record." quoting Matter of Edwards, Interim Decision 3134 (BIA 1990)). "Indeed, in recent years, we have remanded cases to the Board where we have found their decisions deficient in addressing the issue of rehabilitation." Groza, 30 F.3d at 820 (citing Guillen-Garcia v. INS, 999 F.2d 199, 205 (7th Cir.1993), Cortes-Castillo, 997 F.2d at 1203, Akinyemi, 969 F.2d at 289-90)). "While the [Board] need not write an exegesis on every contention, its opinion must reflect that it has heard and thought and not merely reacted." Akinyemi, 969 F.2d at 289 (internal quotation marks and citations omitted). See also Guillen-Garcia v. INS, No. 94-2559, slip op. at 9 (7th Cir. July 17, 1995) (affirming the Board's decision to deny relief after remand to evaluate rehabilitation because: "On remand the Board did consider [petitioner's] conduct while in prison and after his release, and the apparent law-abiding lifestyle he has led since his time in prison," but balanced that against his two previous convictions and denial of culpability).
 
 
 18
 Gonzalez argues that the Board abused its discretion because it failed to adequately consider Gonzalez's evidence of rehabilitation. Gonzalez presented several pieces of evidence of his successful rehabilitation: his guilty plea, statements expressing remorse and shame for his actions, his excellent institutional record, successful parole, and affidavits from current employers. Although the Board did not specifically address the issue of rehabilitation, it adopted the findings of the immigration judge as the basis for its decision. The immigration judge specifically weighed the positive evidence of rehabilitation against the adverse factors in Gonzalez's case, including his departure from the country following his arrest and the fact that he did not surrender himself upon returning to the United States but remained in California for ten months. Because the Board adopted these findings, which fully weighed the evidence of rehabilitation, there was no abuse of discretion.
 
 
 19
 Gonzalez also contends that his due process rights were denied by the Board's actions. Rhoa-Zamora, 971 F.2d at 33, addressed a due process argument similar to Gonzalez's: that the Board failed to accord the petitioner a fully individualized determination of his claims. Following Rhoa-Zamora, we hold that because the Board considered Gonzalez's individual circumstance and provided reasons for its decision, due process has been satisfied.
 
 III. Conclusion
 
 20
 We DENY the petition for review and AFFIRM the order of deportation.
 
 
 
 [1]
 "Although Sec. 212(c) literally refers only to the excludability of aliens seeking readmission to the United States, it has been interpreted to apply also 'to lawful permanent residents who have not left the United States but [who] meet the seven-year requirement and face deportation.' " Groza v. United States, 30 F.3d 814, 818 n. 3 (7th Cir.1994) (quoting Henry v. INS, 8 F.3d 426, 430 n. 4 (7th Cir.1993))