**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 91-4664
No. 92-4177
_____


IBRAHIM FEZ GHASSAN,

Petitioner,

VERSUS

IMMIGRATION AND NATURALIZATION SERVICE,

Respondent.


_____

Petitions for Review of Orders of the
Immigration and Naturalization Service
_____
(September 8, 1992)


Before WISDOM, SMITH, and EMILIO M. GARZA, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Ibrahim Fez Ghassan, a native and citizen of Lebanon who was a permanent resident of the United States, was convicted of conspiracy to import and distribute heroin. After he was released from prison, the Immigration and Naturalization Service ("INS") began deportation proceedings. An immigration judge ("IJ") denied his application for waiver of deportation, and the Board of Immigration Appeals ("BIA") affirmed that denial and denied Ghassan's motions to reconsider or reopen. Ghassan petitions for

review of the BIA's decisions. Finding that the decisions were within the BIA's discretion, we deny the petitions.

I.

Ghassan first came to the United States in 1978 at the age of seventeen to attend college in Minnesota. In 1980 he began dating Donna Owings, a United States citizen and resident of Minnesota. This relationship ended in 1982 when Owings moved to North Carolina with her parents.

In 1981 Ghassan gained permanent resident alien status. In 1983 he and several other Lebanese citizens, including his brother, began a scheme to import and distribute heroin. The following year, Ghassan pleaded guilty to an indictment charging him with conspiracy to import and distribute heroin; he was sentenced to eight years in prison and a $25,000 fine.

While Ghassan served his sentence, Owings contacted him and they began corresponding. She was married and had a son but was separated from her husband because he had abused her. Ghassan was released from prison in 1989 into the custody of the INS, which initiated deportation proceedings in Louisiana in March 1989, pursuant to 8 U.S.C. § 1251(a)(11).[1] Ghassan and Owings, who had divorced her first husband, were married in September 1989, at which time Owings knew that Ghassan was liable to be deported.

Ghassan was charged with deportability because of his heroin conspiracy conviction. He admitted the conviction, and the IJ

---

[1] Now codified at 8 U.S.C. § 1251(a)(2)(B)(i).

found him to be deportable.  Ghassan declared that he would apply for a waiver of deportation and for asylum; the application for asylum later was withdrawn.

In March 1990, the IJ held a hearing on the merits of the waiver application and then denied the application.  Ghassan appealed this decision to the BIA, which received briefs and heard oral argument.  The BIA denied the waiver application on July 12, 1991.  Ghassan then filed a petition for review with this court.

While that petition was pending, Ghassan filed with the BIA a motion to reopen the deportation proceedings and a motion to reconsider its decision.  The BIA denied both motions.  Ghassan then sought our review of the denial of those motions.  The petitions have been consolidated in this case.

## II.

Section 212(c) of the Immigration and Naturalization Act[2] allows the Attorney General to waive deportation of eligible permanent resident aliens, including those convicted of controlled substances offenses.  To be eligible for waiver, an alien must have been in legal permanent residence for at least seven years.  The

---

[2] 8 U.S.C. § 1182(c).  By its terms the statute seems to apply only to aliens who temporarily left the country voluntarily, but the Second Circuit has held that the Equal Protection Clause forbids distinguishing between aliens who briefly left and reentered the country and are facing deportation proceedings and those who have not left and are being deported.  See Francis v. INS, 532 F.2d 268, 272-73 (2d Cir. 1976).  The BIA applies the Second Circuit's ruling nationwide.  See Ashby v. INS, 961 F.2d 555, 557 n.2 (5th Cir. 1992); Mantell v. United States Dep't of Justice, 798 F.2d 124, 125 (5th Cir. 1986).

3

INS does not dispute that Ghassan was eligible to apply for the waiver.

We recently explained the BIA's balancing test for considering applications under section 212(c):

> The immigration judge must balance the adverse factors evidencing an alien's undesirability as a permanent resident with the social and humane considerations presented in his behalf to determine whether the granting of section 212(c) relief appears in the best interests of this country . . . . Among the factors deemed adverse to a respondent's application have been the nature and underlying circumstances of the exclusion ground at issue, the presence of additional significant violations of this country's immigration laws, the existence of a criminal record, and if so, its nature, recency, and seriousness, and the presence of other evidence indicative of a respondent's bad character or undesirability as a permanent resident of this country . . . . Favorable considerations have been found to include such factors as family ties within the United States, residence of long duration in this country (particularly when the inception of residence occurred while the respondent was of young age), evidence of hardship to the respondent and family if deportation occurs, service in this country's armed forces, a history of employment, the existence of property or business ties, evidence of value and service to the community, proof of a genuine rehabilitation if a criminal record exists, and other evidence attesting to a respondent's good character.

Diaz-Resendez v. INS, 960 F.2d 493, 495-96 (5th Cir. 1992) (quoting In re Marin, 16 I & N Dec. 581, 584 (BIA 1978)). We also stated that "[a]pplicants for discretionary relief who have been convicted of serious drug offenses must show `unusual or outstanding equities'" and that "an applicant with a criminal record will ordinarily be required to make a showing of rehabilitation." Id. at 496.

The IJ found that Ghassan had established rehabilitation but that the hardship Ghassan's wife faced was diminished because she had entered into the marriage with knowledge that he might be

4

deported. The IJ also reasoned that Ghassan's length of residence was undercut by the fact that he had been a permanent resident alien for only one year more than the minimum required for eligibility under section 212(c). Finally, the IJ found it significant that he had served four and one-half years of his prison sentence, stating that such a duration was two years longer than normal.

On administrative appeal, the BIA ruled that the IJ had erred in attributing any significance to the length of Ghassan's incarceration. The BIA then considered the factors weighing in favor of granting waiver to Ghassan, most notably the extent to which his wife and her son depended upon him and the hardship they would suffer if he were deported, which would be exacerbated by the fact that United States law would prevent them from traveling to Lebanon with him. The BIA agreed with the IJ, however, that the wife's hardship was lessened by her prior knowledge of possible deportation.

The BIA also disagreed with the IJ's conclusion regarding rehabilitation, stating that it was "unconvinced" of Ghassan's rehabilitation. Finally, the BIA stressed the gravity of drug offenses under our immigration laws. After balancing the factors, the BIA dismissed the appeal.

III.

Although Ghassan questions the standard of review we apply to BIA decisions on section 212(c) applications, we recently made

5

plain that we look for abuse of discretion. In <u>Diaz-Resendez</u>, decided after the briefs were submitted in the instant case, we stated,

> The Board's denial of an applicant's petition for relief under section 212(c) is reviewed for abuse of discretion. Such denial will be upheld unless it is arbitrary, irrational, or contrary to law . . . .
>
> Under this standard, the Board's decision may be reversed as an abuse of discretion when it is made without rational explanation, or inexplicably departs from established policies. Further, a decision by the Board may be found arbitrary if the Board fails to address meaningfully all material factors extant.
>
> Findings of fact supporting the Board's exercise of discretion, however, are reviewed merely to determine whether they are supported by substantial evidence.

<u>Id.</u> at 495 (citations omitted).

Ghassan argues that the BIA considered an irrelevant factor when it stated that his wife's hardship was diminished by the fact that she had entered the marriage with knowledge of his possible deportation. We disagree. The factors the BIA considers are equities, matters of fairness. Considering his wife's previous knowledge seems eminently equitable. <u>See</u> <u>In re Correa</u>, 19 I & N Dec. 130, 134 (BIA 1984) (discounting equities arising after a final order of deportation).[3]

Ghassan also argues that the BIA failed to consider all of the relevant evidence. Our examination of the BIA's opinion shows, however, that to the extent it can consider evidence presented for

---

[3] Although <u>Correa</u>, by its terms, applies only to equities arising after a final order of deportation, Ghassan has provided us with no convincing reason not to hold that prenuptial knowledge of the possibility of deportation is an equitable factor weighing against the hardship that a spouse may suffer.

the first time on appeal, the BIA did consider all of Ghassan's evidence )) it just did not find it compelling.

Finally, Ghassan argues that the BIA erred in finding that he was not rehabilitated. His challenge has two prongs: First, he argues that the BIA should not have disregarded the IJ's finding, because the INS did not challenge that finding in its brief.[4] We disagree.

Unlike the circuit courts of appeals, the BIA is not a court of error.[5] See e.g., Cordoba-Chaves v. INS, 946 F.2d 1244, 1249 (7th Cir. 1991); DeLucia v. INS, 370 F.2d 305, 308 (7th Cir. 1966), cert. denied, 386 U.S. 912 (1967). The BIA reviews the record de novo and is not bound by the IJ's findings. Castillo-Rodriquez v. INS, 929 F.2d 181, 183 (5th Cir. 1991); Rivera v. INS, 810 F.2d 540, 541 (5th Cir. 1987); In re Lok, 18 I & N Dec. 101, 106 (BIA 1981), aff'd on other grounds sub nom. Lok v. INS, 681 F.2d 109 (2d Cir. 1982).[6] Indeed, where no party has appealed an IJ's ruling, the BIA may certify proceedings to itself. 8 C.F.R. § 3.1(c) (1991). In the instant case, the BIA based its decision

---

[4] The INS did not file a formal brief with the BIA. Rather, it filed a memorandum adopting the IJ's findings.

[5] The cases upon which Ghassan bases this portion of his argument refer not to arguments raised before the BIA but to arguments raised for the first time before courts of appeals. E.g., Zalega v. INS, 916 F.2d 1257, 1259 (7th Cir. 1990); United States v. Rodriquez, 888 F.2d 519, 524 (7th Cir. 1989).

[6] Although Ghassan likens findings of rehabilitation to findings of credibility, in which the BIA generally defers to the IJ, that analogy is incorrect. Findings of rehabilitation require consideration of evidence extrinsic to that presented by the subject witness and depend upon more than his demeanor.

upon the administrative record as a whole.  There was no procedural impropriety.

Second, Ghassan argues that the BIA abused its discretion because the evidence in the record overwhelmingly establishes his rehabilitation.  We disagree again.  In rejecting Ghassan's appeal the BIA stated,

> [D]espite the immigration judge's finding, we remain unconvinced as to the respondent's rehabilitation.  He took part in an elaborate criminal conspiracy despite the obvious consequences if he should be discovered and despite the pernicious nature of the activity in which he was engaged.  We are not persuaded by the respondent's good behavior since his conviction that he will not succumb again to his family's pressure and the temptation of the large profits to be had in such activities.

The BIA did not refer to any specific evidence to support its finding that Ghassan is not rehabilitated.  The BIA need not "write an exegesis on every contention," however.  Rather, its opinion must reflect that "it has heard and thought and not merely reacted."  Luciano-Vincente v. INS, 786 F.2d 706, 708-09 (5th Cir. 1986) (quoting Osuchukwu v. INS, 744 F.2d 1136, 1142-43 (5th Cir. 1984)).  After reviewing the BIA's opinion and the record, we find that the BIA provided us with sufficient basis to review its decision.

The BIA's ruling states that Ghassan has not established that his brother will be unable to entice him into another criminal scheme.  Ghassan has the burden of proving that he deserves discretionary relief from deportation.  Diaz-Resendez, 960 F.2d at 495.  Although Ghassan introduced several affidavits to his good character and excellent recent employment history, nothing in the

8

record shows that his brother is no longer involved in criminal activity, nor is there evidence that Ghassan has become immune to his brother's blandishments or has broken off contact with him.

Indeed, according to his testimony during the waiver hearing, Ghassan solicited an affidavit from his brother that asserted that Ghassan had not been involved in the heroin conspiracy and had pleaded guilty in a plea bargain to protect the brother, an assertion that Ghassan admitted was not true.[7] Further, as the BIA noted, nothing reveals how Ghassan would cope with financial hardship.

Having failed to prove rehabilitation, Ghassan could have little hope of obtaining section 212(c) waiver of deportation. Although rehabilitation is not a formal prerequisite for waiver, it is a crucial factor. "As the negative factors grow more serious, it becomes incumbent upon the applicant to introduce additional offsetting favorable evidence, which in some cases may involve unusual or outstanding equities." Diaz-Resendez, 960 F.2d at 496 (quoting Marin, 16 I & N Dec. at 585). "[A]n applicant with a criminal record will ordinarily be required to make a showing of rehabilitation before section 212(c) relief will be granted." Id.

Furthermore, as the BIA stated in its denial of the motion for reconsideration, even if Ghassan had been found rehabilitated, such a finding would not dispose of his application for relief. Ghassan's crime, participation in a well organized, international

---

[7] Additionally, at least one circuit court has recognized that the involvement of members of a petitioner's family in crime may be a negative factor in these proceedings. Munez-Pena v. INS, 956 F.2d 223, 226 (10th Cir. 1992).

9

scheme to smuggle heroin into the United States and distribute it, was extremely serious.[8]

The BIA legitimately could conclude, consistently with its prior holdings, that when balanced against the equities in his favor, which were diminished because his wife married him knowing that he might be deported, the conviction tipped the scales, especially as his wife's son was not his by blood or adoption and Ghassan was not a child when he came to this country.[9]

IV.

We next consider Ghassan's petition to reopen the deportation proceedings. Ghassan moved for reopening so that the BIA could consider additional evidence of his rehabilitation and the hardship that deportation would cause him and his family. The BIA denied the motion because it found that Ghassan was statutorily ineligible to apply for relief under section 212(c).

In order to warrant reopening, a petitioner must make a prima facie showing that he is eligible for the relief sought. INS v.

---

[8] The Supreme Court repeatedly has acknowledged the severity of the societal problems stemming from the importation of illegal drugs. See, e.g., National Treasury Employees Union v. Von Raab, 489 U.S. 656, 668 (1989) (drug smuggling "one of the greatest problems affecting the health and welfare of our population"); United States v. Montoya de Hernandez, 473 U.S. 531, 538 (1985) (citing "veritable national crisis in law enforcement caused by smuggling of illicit narcotics"); see also Scarabin v. Drug Enforcement Admin., 966 F.2d 989, 994-95 (per curiam) (discussing "drug scourge"); Guan Chow Tok v. INS, 538 F.2d 36 (2d Cir. 1976) (distinction between narcotics offenders and other offenders reasonable) (cited in Anetekhai v. INS, 876 F.2d 1218, 1224 (5th Cir. 1989)); In re Cerna, Interim Dec. 3161 (BIA Oct. 7, 1991) (few adverse matters BIA views as more serious than illegal drug importation).

[9] Ghassan also argues that the BIA erred in calling the hardship inflicted by his deportation to Lebanon, where his family could not follow, an unusual equity, rather than two unusual equities. This argument is without merit. The BIA engages in equitable balancing, not mathematical equations. See Diaz-Resendez, 960 F.2d at 495-96.

10

<u>Abudu</u>, 485 U.S. 904, 912 (1988). The BIA deems deportation determinations final after the board's decision on appeal. <u>E.g.</u>, <u>Lok</u>, 18 I & N Dec. at 105; <u>see</u> C.F.R. § 243.1 (1991). After such a final decision, the petitioner's status as a permanent resident alien is ended. <u>See</u> 8 U.S.C. § 1101(a)(20). Thus, the BIA reasoned that Ghassan's case cannot be reopened to reconsider section 212(c) relief because after the BIA's initial determination, he no longer meets the section 212(c) requirement of seven years as a permanent resident alien, as he is no longer a permanent resident alien.

Although Ghassan disputes the standard of review, it is settled that we review the denial of a motion to reopen for abuse of discretion. <u>See</u> <u>INS v. Rios-Pineda</u>, 471 U.S. 444, 449 (1985). Where the denial rests on a finding of statutory ineligibility, we also review for errors of law. Finally, we give great weight to the agency's interpretation of it own regulations, but this interpretation may be discounted if it is plainly unreasonable. <u>Ka Fung Chan v. INS</u>, 634 F.2d 248, 252 (5th Cir. Jan. 1981).

Ghassan objects to the fact that the BIA treats the motion to reopen as a <u>new</u> application for section 212(c) relief. If this were the first time he had attempted to obtain relief under section 212(c) in the context of these proceedings, such a rule would make sense, he argues, but when a petitioner is seeking to reopen the proceedings to present new evidence on the same grounds for relief, treating the motion as a new application seems unreasonable.

11

Our prior decisions preclude Ghassan's argument. We have already effectively upheld the BIA's practice. In Garcia-Hernandez v. INS, 821 F.2d 222, 224 (5th Cir. 1987), where we had affirmed the denial by the BIA of section 212(c) relief before a motion to reopen was filed, we stated, "[W]hen that [section 212(c)] claim was defeated finally by denial in appeal to this court and the determination of deportability had also become final before that time, there was no longer any authority to reopen . . . because petitioner clearly was no longer in lawfully admitted permanent residence." We also have upheld the INS's position that a deportability decision becomes final at the time the BIA renders its decision and that permanent resident alien status ends at that time. See Rivera v. INS, 810 F.2d 540, 541-42 (5th Cir. 1987), vacating on reh'g 791 F.2d 1202 (5th Cir. 1986).

In Rivera we considered whether a petition for section 212(c) relief could be instituted after a final decision of deportability. In the instant case, as in Garcia-Hernandez, the original petition for section 212(c) relief was filed before the final decision of deportability; thus, Ghassan had the right to pursue that relief. Unlike the circumstance in Garcia-Hernandez, the BIA's decision to deny section 212(c) relief has not been upheld by this court. That does not provide a basis upon which to distinguish this case.

In Garcia-Hernandez we concluded that the BIA was correct in holding that the petitioner was no longer eligible for section 212(c) relief because he was no longer a lawful resident and so could not obtain reopening. 821 F.2d at 224. Under Rivera

12

an alien's lawful status ends when the BIA rules him deportable. 810 F.2d at 541-42. Thus, after the BIA decides that an alien is deportable, he is no longer a legal resident and thus is not eligible for section 212(c) relief, so his petition for reopening must be rejected.[10] Accordingly, the BIA did not err in denying Ghassan's motion to reopen.

## V.

Ghassan makes three arguments as to his motion to reconsider. First, he raises essentially the same points as in his petition on the merits. Second, he contends that the BIA erred by not considering evidence that was submitted during the appeal and with the motion to reconsider. Third, he states that the BIA erred in refusing to reconsider that a change in INS policy, banning deportees from reentry for twenty years, rather than five, increased the hardship on him and his family.

We review the denial of a motion to reconsider for abuse of discretion. Osuchukwu, 744 F.2d at 1141. Reopening and reconsideration are not favored. Abudu, 485 U.S. at 107. We do not believe that the BIA erred.

Ghassan's first point of error reiterates his arguments concerning the plural nature of his outstanding equities, the BIA's consideration of his rehabilitation, and the BIA's discounting of his family hardship because his marriage occurred after deportation

---

[10] Accord Gonzales v. INS, 921 F.2d 236, 240 (9th Cir. 1990) (upholding rule). Contra Vargas v. INS, 938 F.2d 358 (2d Cir. 1991) (holding rule arbitrary and capricious).

proceedings had begun.  We already have rejected those arguments and need not revisit them.

Nor do we accept Ghassan's second argument that the BIA erred by not considering additional evidence of his rehabilitation and hardship that he submitted during the administrative appeal.  The BIA stated that it did not consider this evidence because the BIA considers only the record that was before the IJ.  The BIA is correct.

When evidence is submitted with a motion to reopen or reconsider, the BIA considers that evidence only as necessary to determine whether a new hearing is warranted.  See 8 C.F.R. § 3.8 (1991) ("Motions to reopen shall state the new facts to be proved at the reopened hearing . . . .").  It would be inappropriate for the BIA to revise its opinion based upon evidence that had not been tested in the "crucible of the judicial process," including cross examination.[11]

Finally, Ghassan argues that the BIA should have reconsidered because his hardship was increased by a change in INS policy, whereby his reentry after deportation would be barred for twenty years instead of five.[12]  The BIA correctly noted that this was, in essence, a motion to reopen for consideration of additional evidence and thus, as we have explained, was not available to

_____

[11] See Briscoe v. LaHue, 460 U.S. 325, 333 (1983); Marrero v. City of Hialeah, 625 F.2d 499, 508 (5th Cir. 1980) (quoting Imbler v. Pechtman, 424 U.S. 409, 439-40 (1976) (White, J., concurring)).

[12] See 8 U.S.C. § 1182(a)(6)(B) (deported alien convicted of an aggravated felony who seeks admission within 20 years is excludable).  In 1991 the INS announced that it would apply that provision to convictions that predate its enactment in 1988.  68 Interpreter Releases 341 (Mar. 25, 1991).

14

Ghassan.  The BIA further stated that even if it considered the matter to be a motion to reconsider, Ghassan had not demonstrated any additional hardship he will suffer on account of the change in the law.

We do not believe that the BIA abused its discretion in rejecting the motion.  The portion of Ghassan's motion addressing the INS policy seeks to convince the BIA to consider new facts that were not before the IJ.  It is thus a motion to reopen, not a motion to reconsider.  See Pierre v. INS, 932 F.2d 418, 421-22 (5th Cir. 1991); 8 C.F.R. § 3.8 (1991).  For reasons already discussed, Ghassan was no longer eligible for reopening, and we reject his argument.


VI.

We recognize that deporting Ghassan may cause hardship to him, his wife, and her son.  Nevertheless, in light of the well established public policy against drug trafficking, we cannot say that the BIA abused its discretion in mandating Ghassan's deportation.  As the importation of illegal narcotics continues to pose a grave menace to society, those involved with the drug trade can expect to find that they inevitably hurt those they care for as well as those upon whom they prey.

AFFIRMED.