Elston A. HENRY, Petitioner,

v.

IMMIGRATION AND NATURALIZATION SERVICE, Respondent.

Nikola AKRAP, Petitioner,

v.

IMMIGRATION AND NATURALIZATION SERVICE, Respondent.

Nos. 91–2252, 92–1476, 92–2801 and 92–3104.

United States Court of Appeals, Seventh Circuit.

Argued April 27, 1993.

Decided Oct. 15, 1993.

Royal F. Berg (argued), Kenneth Y. Geman, Chicago, IL, for Elston A. Henry.

Mary L. Sfasciotti (argued), Chicago, IL, for Nikola Akrap.

Fred Foreman, U.S. Atty., Crim. Div., Chicago, IL, Richard Evans (argued), William J. Howard, Lori L. Scialabba, David J. Kline, Dept. of Justice, Office of Immigration Litigation, Richard L. Thornburg, U.S. Atty. Gen., Washington, DC, A.D. Moyer, I.N.S., Chicago, IL, for I.N.S.

Before FLAUM, RIPPLE, and ROVNER, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

Two of the four petitions for review before us today present a common question of law—whether Elston Henry and Nikola Akrap, both of whom are subject to final administrative orders of deportation resulting from narcotics convictions, may seek to reopen their previously-denied applications for a discretionary waiver of deportation under section 212(c) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(c), to present evidence of changed circumstances. The Board of Immigration Appeals (the "Board" or "BIA") said no as a matter of law because an alien can no longer satisfy section 212(c)'s lawful permanent residency requirement after a final order of deportation has been entered. The circuits have disagreed in reviewing this interpretation of the statute, and we align ourselves today with those that have rejected it. We accordingly grant two of the petitions for review and remand each case to the Board for further proceedings.

## I. BACKGROUND

### A. Elston A. Henry

Henry is a native and citizen of Antigua, West Indies who was admitted into the United States as a lawful permanent resident on August 6, 1976. Almost ten years later, on April 21, 1986, Henry was convicted by a jury of distributing less than ten grams of a substance containing cocaine, a felony under Illinois law. He was sentenced to a short period of work release and four years probation. The judge also imposed a fine and required Henry to resume paying child support.[1] Henry subsequently was charged with possessing with the intent to deliver between one and fifteen grams of cocaine, a violation of his probation. The judge therefore revoked Henry's probation and sentenced him to five years in prison.[2]

Before Henry's probation was revoked, however, the Immigration and Naturalization

---

1. Henry has a daughter and a son, both of whom are United States citizens. He previously had been paying child support for his daughter.

2. The probation violation suggested that the earlier cocaine conviction had not stemmed from an isolated incident. In fact, Henry testified before the Immigration Judge that he had used cocaine "a few times," and when immigration officers took him into custody in December 1986, they found a vial of cocaine in his possession.

Service ("INS") had commenced deportation proceedings pursuant to INA section 241(a)(11), 8 U.S.C. § 1251(a)(11), because of his conviction for a drug offense.[3] Henry conceded deportability but moved for a discretionary waiver of deportation pursuant to section 212(c), 8 U.S.C. § 1182(c).[4] The Immigration Judge ("IJ") denied the application, and the Board dismissed Henry's subsequent appeal in an opinion dated December 7, 1990. The Board concluded that Henry had failed to show the unusual or outstanding equities required for section 212(c) relief from a deportation order based on a serious drug offense. The Board noted that Henry had not lived in the United States for long, that he did not have a close relationship with his two children, that he was substantially in arrears on his child support obligations and that he had not resumed payments until ordered to do so as part of his original sentence on the cocaine conviction, that his deportation would not cause extreme hardship for his children or girlfriend, and that his parents and two siblings still lived in Antigua. The Board also emphasized that Henry had

shown no signs of rehabilitation, particularly in view of the second cocaine charge, which had resulted in the revocation of his probation. Henry petitioned for review of the Board's dismissal of his appeal (No. 92–2252), which we consider below in Part II. A.

After retaining new counsel, Henry filed two motions to reopen his section 212(c) application pursuant to 8 C.F.R. § 3.2.[5] The first, filed on December 9, 1991, asserted that Henry had received ineffective assistance of counsel in presenting his section 212(c) application. Henry complained that his counsel had presented no witnesses other than Henry himself at the original hearing and that he had not filed a brief in support of Henry's appeal to the Board, so that the Board had dismissed the appeal without the benefit of written argument on Henry's behalf. The motion to reopen was accompanied by a number of affidavits from friends and family members attesting to Henry's good character and indicating that they would have testified on Henry's behalf at the initial hearing if

---

3. Although section 241(a)(11) has been amended by the Immigration Act of 1990, the amendments do not apply to deportation proceedings commenced before March 1, 1991. *Castaneda–Suarez v. INS*, 993 F.2d 142, 143 n. 1 (7th Cir.1993). Deportability based upon the commission of a criminal offense is now addressed in section 241(a)(2), 8 U.S.C. § 1251(a)(2).

4. Section 212(c) provides in pertinent part:
   Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General....
   8 U.S.C. § 1182(c). Although section 212(c) literally refers only to the excludability of aliens seeking readmission to the United States, it has been interpreted to also apply "to lawful permanent residents who have not left the United States but [who] meet the seven-year requirement and face deportation." *Cortes–Castillo v. INS*, 997 F.2d 1199, 1202 (7th Cir.1993); *see also Castaneda–Suarez*, 993 F.2d at 143 n. 2; *In re Silva*, 16 I. & N. Dec. 26 (BIA 1976).

5. That regulation, which permits an alien to file a motion to reopen or to reconsider any decision of the Board, provides as follows:
   The Board may on its own motion reopen or reconsider any case in which it has rendered a decision. Reopening or reconsideration of any

case in which a decision has been made by the Board, whether requested by the Commissioner or any other duly authorized officer of the Service, or by the party affected by the decision, shall be only upon written motion to the Board. Motions to reopen in deportation proceedings shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing; nor shall any motion to reopen for the purpose of affording the alien an opportunity to apply for any form of discretionary relief be granted if it appears that the alien's right to apply for such relief was fully explained to him and an opportunity to apply therefor was afforded him at the former hearing unless the relief is sought on the basis of circumstances which have arisen subsequent to the hearing. A motion to reopen or a motion to reconsider shall not be made by or in behalf of a person who is the subject of deportation proceedings subsequent to his departure from the United States. Any departure from the United States of a person who is the subject of deportation proceedings occurring after the making of a motion to reopen or a motion to reconsider shall constitute a withdrawal of such motion. For the purpose of this section, any final decision made by the Commissioner prior to the effective date of the Act with respect to any case within the classes of cases enumerated in § 3.1(b)(1), (2), (3), (4), or (5) shall be regarded as a decision of the Board.

they had been asked to do so. Henry also submitted a marriage certificate reflecting his recent marriage to a United States citizen, a receipt reflecting a child support payment, and a letter from Henry's church. The Board found that Henry had failed to comply with its requirements for asserting an ineffectiveness claim. But the Board also considered the claim on its merits and rejected it, finding that Henry had received a full and fair hearing, that his counsel had presented substantial evidence in his favor, and that the additional evidence would have been largely cumulative. The Board also found that Henry was ineligible for section 212(c) relief in any event because his status as a lawful permanent resident had terminated with entry of the Board's final administrative order of deportation. Henry petitioned for review of the Board's denial of this motion to reopen (No. 92–1476), which we consider in Part II. C.

Henry filed a second motion to reopen on June 5, 1992, this time attempting to supplement his section 212(c) application with facts that arose after the first motion had been filed. Henry asked the Board to consider that his father recently had died, that his mother and sister had emigrated from Antigua to the United States, and that his mother had cancer. Henry argued that he retained eligibility to supplement his application because his appeal of the Board's final order of deportation was still pending here. The Board this time denied Henry's motion solely on the ground that he was statutorily ineligible to seek section 212(c) relief. The Board concluded that a final order of deportation had been entered December 7, 1990, when it dismissed Henry's appeal of the IJ's denial of section 212(c) relief, and that the finality of the deportation order was unaffected by Henry's petition for review of that order. Henry then petitioned for review of this final denial (No. 92–2801), which we address in Part II. B.

### B. Nikola Akrap

Akrap, meanwhile, became subject to a final administrative deportation order on July 2, 1991, and we denied a petition for review of that order on June 26, 1992. *Akrap v. INS*, 966 F.2d 267 (7th Cir.1992).[6] Like Henry, Akrap is subject to deportation for a cocaine conviction in Illinois state court, and both the IJ and the Board denied his application for a section 212(c) waiver of deportation.

Akrap also filed two motions to reopen. The first, submitted on August 2, 1991, requested that the Board consider supplemental evidence relating to the deteriorating health of Akrap's father and to the political unrest in Yugoslavia and Croatia. The Board denied the motion, finding that Akrap had become statutorily ineligible for section 212(c) relief when the Board entered its final order of deportation. Because Akrap did not petition for review of that denial, it is not before us.[7] Instead, Akrap filed a second motion to reopen requesting two types of relief: (1) that the Board designate Croatia (rather than Yugoslavia) as the country of deportation because Croatia recently had declared its independence from Yugoslavia and Akrap had been born there; and (2) that the Board consider supplemental evidence relating to his father's death, to the civil war between Serbia and Croatia, and to the deteriorating conditions that he and his family would face if forced to return to Croatia. The Board redesignated Croatia as Akrap's country of deportation but denied the motion to reopen in all other respects. The Board also refused to reconsider its earlier ruling that Akrap was statutorily ineligible for section 212(c) relief in light of *Vargas v. INS*, 938 F.2d 358 (2d Cir.1991), which had reversed a finding of statutory ineligibility in similar circumstances. The Board explained that it did not agree with *Vargas* and would not follow that decision outside the Second Circuit. The Board thus refused to consider

**6.** We described Akrap's circumstances in that decision and will not repeat them here. *See id.* at 268–69.

**7.** On his first petition for review, Akrap requested that we consider the Board's denial of his motion to reopen, but we lacked jurisdiction to

review that ruling because the Board had not yet rendered a final decision on that motion when Akrap filed his petition, and Akrap did not file a separate petition for review once it became final. *Id.* at 269–71.

Akrap's supplemental evidence, and he now asks that we review that decision. We do so in Part II. B.

We have jurisdiction over all four petitions for review pursuant to 8 U.S.C. § 1105a(a)(1).

## II. DISCUSSION

### A. Denial of Henry's Request for Section 212(c) Relief

■ In his first petition, Henry challenges the Board's dismissal of his appeal of the IJ's denial of a discretionary waiver of deportation under section 212(c). Henry specifically contests the Board's requirement that he show "unusual or outstanding equities." We review the Board's decision for an abuse of discretion; we may reverse only if the decision " 'was made without a rational explanation, ... inexplicably departed from established policies, or rested on an impermissible basis.' " *Cortes–Castillo v. INS*, 997 F.2d 1199, 1203 (7th Cir.1993) (quoting *Espinoza v. INS*, 991 F.2d 1294, 1297 (7th Cir.1993)); *see also Akinyemi v. INS*, 969 F.2d 285, 288 (7th Cir.1992). Based on the evidence of record from Henry's deportation hearing, the Board did not abuse its discretion in denying Henry's application for a waiver of deportation.

In considering a section 212(c) application, the Board must balance "the social and humane considerations in the alien's favor against any adverse factors that demonstrate his or her undesirability as a permanent resident in the United States." *Cortes–Castillo*, 997 F.2d at 1202; *see also Akinyemi*, 969 F.2d at 288; *Cordoba–Chaves v. INS*, 946 F.2d 1244, 1247 (7th Cir.1991). The Board's now familiar decision in *In re Marin*, 16 I. & N. Dec. 581 (BIA 1978), guides our analysis of the relevant factors. As we reiterated in *Cortes–Castillo*:

[f]actors favoring relief include:

[F]amily ties within the United States, residence of long duration in this country (particularly when the inception of residence occurred while the respondent was of young age), evidence of hardship to the respondent and family if deportation occurs, service in this country's

Armed Forces, a history of employment, the existence of property or business ties, evidence of value and service to the community, proof of a genuine rehabilitation if a criminal record exists, and other evidence attesting to a respondent's good character (e.g. affidavits from family, friends, and responsible community representatives).

*Marin*, 16 I. & N. [Dec.] at 584–85. Adverse factors include the nature and underlying circumstances of the exclusion ground at issue, any additional significant violations of this country's immigration laws, the nature, recency, and seriousness of a criminal record, and any other evidence of an alien's bad character or undesirability as a permanent resident. *Id.* at 584.

997 F.2d at 1202; *see also Akinyemi*, 969 F.2d at 288; *Cordoba–Chaves*, 946 F.2d at 1247.

■ The Board must review the applicant's evidence in light of these factors and provide a reasoned explanation for its discretionary decision, demonstrating that it considered the evidence supporting the application and enabling " 'a reviewing court to perceive that it has heard and thought and not merely reacted.' " *Vergara–Molina v. INS*, 956 F.2d 682, 685 (7th Cir.1992) (quoting *Becerra–Jimenez v. INS*, 829 F.2d 996, 1000 (10th Cir.1987)); *see also Cortes–Castillo*, 997 F.2d at 1203. The Board satisfied its obligations here.

■ After reviewing Henry's evidence in support of his application, the Board agreed with the IJ that Henry did not merit a waiver of deportation. In light of the seriousness of Henry's cocaine offense and his overall criminal record, the Board required Henry to show "unusual or outstanding equities" to justify relief. The Board observed:

The respondent's equities are not particularly unusual or outstanding, and they do not overcome the negative factors of record. The respondent's residence in the United States has not been long and it did not begin at a young age. The respondent has provided no evidence of any close relationship to his two children. In addition, the record reveals that the respondent re-

sumed support payments for his daughter after approximately 6½ years and only pursuant to a court ordered condition of his sentence. There is no evidence in the record to indicate that any hardship would befall the respondent's two children, girlfriend, or other family members if he is deported. The respondent's parents and two other siblings still reside in Antigua. Further, the respondent has not exhibited any evidence of rehabilitation. The respondent admitted to the possession of a vial of cocaine intended for his own personal use within approximately 8 months of his felony conviction for delivery of cocaine and while he was on probation. He was found in violation of probation on July 21, 1988, based on a charge that he possessed a substance containing cocaine with intent to deliver on June 20, 1988, and was sentenced to 5 years in prison.

(Henry App. Ex. 1, at 3–4.) The Board thus offered a rational explanation for its decision and did not depart from established policies or rest its decision on an impermissible basis. *See Cortes–Castillo*, 997 F.2d at 1203. Indeed, Henry's primary challenge to the Board's discretionary decision goes not to the result of its weighing process but to the Board's requirement that he show "unusual or outstanding equities." Yet we have consistently upheld such a requirement where deportability is based on a serious drug offense. *See, e.g., id.* at 1202–03; *Akinyemi*, 969 F.2d at 288–89; *Cordoba–Chaves*, 946 F.2d at 1247, 1249; *see also Nunez–Pena v. INS*, 956 F.2d 223, 225 (10th Cir.1992). The Board therefore did not abuse its discretion in requiring Henry to show unusual or outstanding equities, or in finding that he failed to do so. *See, e.g., Chavez–Arreaga v. INS*, 952 F.2d 952, 953–54 (7th Cir.1991).[8] We accordingly deny Henry's petition for review in appeal No. 91–2252.

**B. Statutory Eligibility to Reopen Section 212(c) Applications**

Because Henry's petition for review in appeal No. 92–2801 and Akrap's petition in appeal No. 92–3104 present a common ques-

tion, we consider those petitions together. Both Henry and Akrap maintain that they were eligible to reopen their section 212(c) applications even after the Board had entered final orders of deportation. The Board disagreed, holding that their status as lawful permanent residents ended with entry of the deportation orders and that they therefore became ineligible for section 212(c) relief at that time. The circuits have split on whether the Board's position should be upheld. *Compare Katsis v. INS*, 997 F.2d 1067 (3d Cir. 1993) (upholding Board's rule) *and Ghassan v. INS*, 972 F.2d 631 (5th Cir.1992) (same), *cert. denied*, —— U.S. ——, 113 S.Ct. 1412, 122 L.Ed.2d 783 (1993) *with Goncalves v. INS*, 6 F.3d 830 (1st Cir.1993) (setting aside rule because Board has failed to adequately explain departure from its regulation); *Butros v. INS*, 990 F.2d 1142 (9th Cir.1993) (en banc) (rejecting Board's rule and overruling *Gonzales v. INS*, 921 F.2d 236 (9th Cir.1990), which had accepted the rule) *and Vargas v. INS*, 938 F.2d 358 (2d Cir.1991) (finding rule arbitrary and capricious). We have yet to directly address the issue, but we hold today that the Board's position is an unreasonable interpretation of the INA and that Henry and Akrap remained eligible to reopen their section 212(c) applications even after they became subject to final orders of deportation. The Board should therefore have examined the proffered evidence of changed circumstances to determine whether to reopen their applications. We remand so that it may do so.

**1. Standard of review**

▆ A preliminary question on which the circuits have disagreed is the standard under which the courts should review the Board's decision on this question. The Ninth Circuit has labeled the question "purely legal," calling for de novo review. *Butros*, 990 F.2d at 1144; *see also Gonzales*, 921 F.2d at 238. The Second Circuit, although reversing the Board's denial of a motion to reopen, conducted only a "limited review" where it sought "to determine whether the decision

**8.** Given the strong evidence suggesting a lack of rehabilitation (*i.e.*, Henry's subsequent drug offenses), it is unlikely that the Board would have

exercised its discretion in Henry's favor even if it had not required him to establish unusual or outstanding equities.

was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Vargas*, 938 F.2d at 360 (citing *INS v. Abudu*, 485 U.S. 94, 108 S.Ct. 904, 99 L.Ed.2d 90 (1988)). The Fifth Circuit employed a similar standard in *Ghassan*, reviewing the Board's decision for an abuse of discretion but also noting that because the denial of relief rested on a finding of statutory ineligibility, a review for errors of law also was required. 972 F.2d at 637. In that review, the court gave "great weight to the agency's interpretation of its own regulations" but was nonetheless prepared to discount any interpretation that was "plainly unreasonable." *Id.* The Third Circuit recently applied an even more deferential standard in *Katsis*. Relying on the Supreme Court's decision in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), the Third Circuit explained:

> "[C]ourts must respect the interpretation of the agency to which Congress has delegated the responsibility for administering the statutory program," *INS v. Cardoza–Fonseca*, 480 U.S. 421, 488, 94 L.Ed.2d 434, 107 S.Ct. 1207 (1987) (citations omitted), unless that interpretation is "arbitrary, capricious, or manifestly contrary to the statute." *Chevron*, 467 U.S. at 844, 104 S.Ct. at 2782. *See also Butros*, 990 F.2d at 1149 (Trott, J., dissenting).

997 F.2d at 1070. The court therefore decided to defer to the Board's interpretation so long as it was "permissible," which the court found it to be. *Id.* at 1070–71.

In *Variamparambil v. INS*, 831 F.2d 1362, 1366 (7th Cir.1987), which also involved an alien's legal eligibility for section 212(c) relief (*see infra*, at 434–35), we relied on *Chevron* for the proposition that the Board's interpretation is entitled to deference and will be upheld as long as it is reasonable. *See also Perez–Rodriguez v. INS*, 3 F.3d 1074, 1077–78 (7th Cir.1993); *Leal–Rodriguez v. INS*, 990 F.2d 939, 944 (7th Cir.1993) ("we must defer to the BIA's views so long as they are a

reasonable reading of the INA on a question to which Congress has not spoken."); *Zalega v. INS*, 916 F.2d 1257, 1259 (7th Cir.1990) ("To the extent that this case turns on the BIA's interpretation of the Immigration Act, our review is *de novo;* however, so long as its interpretation is reasonable, we must defer to the BIA."). The Board's decisions here rest in part on its interpretation of "lawful permanent residence," as that term is defined in the INA, 8 U.S.C. § 1101(a)(20).[9] *See In re Cerna*, Interim Decision 3161, at 3 (BIA 1991) (alien's status as lawful permanent resident "changes" upon the Board's entry of a final administrative order of deportation); *see also Butros*, 990 F.2d at 1144. This interpretation is entitled to deference, assuming it is reasonable.

### 2. Reasonableness of the Board's interpretation

In denying the motions to reopen based upon statutory ineligibility, the Board relied on our *Variamparambil* decision as controlling authority. It is not. In that case, we considered the distinct question of whether an alien may accrue time toward section 212(c)'s seven-year residency requirement after a final order of deportation has been entered but before a circuit court has completed its review of that order. *See Perez–Rodriguez*, 3 F.3d at 1078 ("The issue in *Variamparambil* was whether the alien's status as a lawful permanent resident had terminated before the seven-year period."). To resolve this question, we were required to consider the reasonableness of the Board's decision in *In re Lok*, 18 I. & N. Dec. 101 (BIA 1981), *aff'd on other grounds*, 681 F.2d 107 (2d Cir.1982), that lawful domicile ends when an order of deportation becomes administratively final. *Variamparambil*, 831 F.2d at 1366. We found the Board's interpretation to be reasonable, agreeing with its concern that by "extending the time beyond the final administrative order [we] would encourage spurious appeals made solely for the purpose of accumulating more time for

---

9. That section provides that
[t]he term "lawfully admitted for permanent residence" means the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed.
8 U.S.C. § 1101(a)(20).

§ 212(c) relief." *Id.* We also agreed that this rule would not unduly prejudice aliens because if a petition for review were granted, the alien's lawful permanent resident status would be restored and the alien would then continue to accumulate time toward the seven-year residency requirement. *Id.* at 1367.[10] Our decision in *Variamparambil* means only that lawful permanent resident status terminates upon entry of a final order of deportation for purposes of fulfilling the seven years of lawful unrelinquished domicile required for section 212(c) relief. *See Perez–Rodriguez*, 3 F.3d at 1078. *Variamparambil* does not address the separate question of whether petitioners like Henry and Akrap, who clearly satisfied the seven-year requirement when they initially applied under section 212(c), became statutorily ineligible to reopen their applications once the Board issued its final order.[11]

In addition to *Variamparambil*, the Board also relied on its own decisions in *In re Cerna*, Interim Decision 3161 (BIA 1991), and in *Lok* to support its decisions below. As our discussion of *Variamparambil* suggests, *Lok* is limited to the initial accrual of seven years' unrelinquished domicile and does not address the question presented here. As the Second Circuit observed in *Vargas*, *Lok* (like *Variamparambil* ), "stands only for the proposition that an alien cannot *become* eligible for discretionary relief through subsequent accrual of time towards the seven-year threshold, once he has conceded that he is deportable." 938 F.2d at 361 (emphasis in *Vargas* ); *see also Goncalves*, 6 F.3d at 832–34.

In *Vargas*, the Second Circuit found that *Lok* could not reasonably be extended to circumstances like those presented here. *Vargas*, 938 F.2d at 360–61. In doing so, the Second Circuit broke ranks with the other circuits, which had found *Lok* to be an appropriate basis for the Board's statutory ineligibility rule. *See, e.g., Gonzales v. INS*, 921 F.2d 236, 239–40 (9th Cir.1990), *overruled by Butros*, 990 F.2d at 1145; *Garcia–Hernandez v. INS*, 821 F.2d 222, 224 (5th Cir.1987) (petitioner ineligible to reopen section 212(c) application after reviewing court had affirmed Board's original denial of section 212(c) relief).[12] As *Vargas* explained, however, the *Lok* rule should not be extended to the present circumstances because the motivation underlying *Lok*—"preventing an alien from manipulating deportability proceedings so as to acquire the seven years of domicile—is not present here." 938 F.2d at 361. The Second Circuit thus concluded that *Lok* alone could not justify the Board's decision. *Id.* The court also noted that the Board's extension of the *Lok* rule implicitly amended the Board's existing regulation, 8 C.F.R. § 3.2, which permits motions to reopen until an alien actually is deported. *Id.* at 361–62. For these and other reasons, the court found that the Board's decision was arbitrary and capricious and granted the petition for review. *Id.* at 363–64.

Akrap's second motion to reopen asked the Board to reconsider its ineligibility finding in light of *Vargas*. The Board tersely responded that it disagreed with *Vargas* and therefore would not follow that decision outside the Second Circuit. The sole support it cited for rejecting *Vargas* was its own decision in

---

10. In approving the Board's rule, we relied on *Rivera v. INS*, 810 F.2d 540, 541–42 (5th Cir. 1987), where the Fifth Circuit found that the petitioner was ineligible to submit a section 212(c) application after entry of a final order of deportation. Unlike Henry and Akrap, however, Rivera had not requested section 212(c) relief prior to entry of the Board's order; he instead had filed a motion to reopen for that purpose. *See Garcia–Hernandez v. INS*, 821 F.2d 222, 224 (5th Cir.1987) ("The issue in *Rivera* was whether a petition for § 212(c) relief could be instituted after a final decision of deportability by the BIA but before appeal to this Court."). The Fourth Circuit recently followed *Rivera* in *Nwolise v. INS*, 4 F.3d 306, 310 (4th Cir.1993). Neither

*Rivera* nor *Nwolise* address the decidedly different issue presented here.

11. The Board is not alone in its overly broad interpretation of *Variamparambil*. The dissenting judges in *Butros*, 990 F.2d at 1151 (Trott, J., dissenting), similarly suggested that *Variamparambil* resolved the current question.

12. In *Ghassan*, 972 F.2d at 637–38, the Fifth Circuit extended *Garcia–Hernandez* to the situation we confront here—where an alien has sought to reopen a section 212(c) application after entry of a final order of deportation but before the reviewing court has upheld the denial of section 212(c) relief.

*Cerna,*[13] which had reaffirmed *Lok* and attempted to address the Second Circuit's concerns about extending *Lok* to motions to reopen section 212(c) applications.

First, *Cerna* addressed *Vargas'* statement that "[a] motion to reopen or to reconsider is not a request for a *new* decision," but such a motion "permits a decisionmaker to reevaluate the original decision." *Vargas,* 938 F.2d at 362. The Board distinguished between motions to reconsider and motions to reopen and criticized the Second Circuit for "inappropriately entwin[ing]" the two. *Cerna,* at 5. In the Board's view, motions to reconsider were unaffected by the *Lok* rule because they merely asked the Board to reconsider an earlier decision based on the same record:

> When we reconsider a decision, we are in effect placing ourselves back in time and considering the case as though a decision in the case on the record before us had never been entered. If the respondent was eligible for relief at the time the original decision was entered, then in reconsidering the decision we would treat his status as that which it had been at the time of the initial decision. The very nature of the motion to reconsider is that the original decision was defective in some regard.

*Id.* at 6. The Board characterized a request to reopen as "a fundamentally different motion," explaining:

> [A] motion to reopen proceedings seeks to reopen proceedings so that new evidence can be presented and so that a new decision can be entered, normally after a further evidentiary hearing. We find nothing

either inconsistent or illogical in holding that a respondent can move for reconsideration of a decision, which was entered while he was a lawful permanent resident and which denied relief under section 212(c), based on an argument that that decision was incorrectly entered, while a respondent who has lost his status as a lawful permanent resident cannot thereafter successfully move to reopen proceedings to have *a different application for relief under section 212(c) adjudicated on a different factual record.* Rather, we would find it inconsistent to conclude that an alien who is no longer a lawful permanent resident of the United States could have proceedings reopened to apply for relief only available to lawful permanent residents.

*Id.* at 6–7 (emphasis added).

The Board also took issue with *Vargas'* suggestion that its interpretation had effectively amended 8 C.F.R. § 3.2[14] because, as the Board saw it, that regulation did not create an express right to reopen; instead, a proceeding need only be reopened once certain showings were made. *Id.* at 5. Finally, the Board cautioned that, in general, it was "not favorably disposed to the practice of waiting until the conclusion of the administrative appeal process to file a motion that seeks to offer additional evidence regarding the matter previously in issue." *Id.* at 7.

Subsequent to *Cerna,* an en banc panel of the Ninth Circuit joined *Vargas* in rejecting the Board's rule. *See Butros, supra. Butros* did not discuss *Cerna* but like the Second

---

13. In a footnote, the Board explained that *Vargas* was not binding in the Seventh Circuit in any event and that it was instead bound to follow our decision in *Variamparambil.* We have explained above why that decision does not support the Board's action in these cases.

14. *Vargas* stated:

> The BIA's decision denying petitioner's motion also effectively amends an existing regulation without notice or opportunity for comment. This supports our conclusion that the decision is arbitrary and capricious. 8 C.F.R. § 3.2 provides that the BIA may hear motions to reconsider and reopen. Such motions may concern deportability and discretionary relief. Among other things, motions to reconsider and

> reopen may be based upon "circumstances which have arisen subsequent to the hearing."
>
> That regulation terminates an alien's ability to move to reconsider or reopen upon physical deportation.... The making of a motion to reconsider or reopen is not otherwise barred.
>
> . . . . .
>
> Here, however, the BIA's decision bars a motion to reopen or reconsider a decision under Section 212(c) not on the grounds of physical deportation, but because the BIA's order is "administratively final." The decision thus prevents a large group of aliens (those subject to orders of deportability issued by the BIA) from making the very motions to reconsider or reopen contemplated by 8 C.F.R. § 3.2.

938 F.2d at 362.

Circuit in *Vargas* focused on the Board's regulation, 8 C.F.R. § 3.2. The court thought the Board's finding of statutory ineligibility contradicted the regulation, for "the right to move to reconsider or to reopen is nowise limited by reference to the administrative finality of the Board's initial decision." 990 F.2d at 1144. The court reasoned that if the Board's position were accepted, there essentially would be "no such thing as reconsideration or reopening for the petitioner who lost on the first round," yet the Board's own regulation permits just that. *Id.* This, the court observed, "is to engage in contradiction." *Id.* In overruling its decision in *Gonzales*, which had applied *Lok* to a situation where the seven-year residency requirement had already been met, the Ninth Circuit explained that "[t]he fallacy of *Gonzales* is the belief that what is final for certain administrative purposes is final for all purposes." *Id.* at 1145.[15] "[A]s long as the Board may reconsider or reopen the case, the status of the petitioner in that case for purposes of section 212(c) relief has not been finally determined for purposes of action by the Board." *Id.* The court also found that any concern with endless applications to reopen was allayed by the regulation itself, which only permits such motions before a petitioner's departure from the United States. *Id.* at 1145–46.

Three months later, the Third Circuit rejected both *Butros* and *Vargas* when it upheld the Board's finding of statutory ineligibility. *See Katsis, supra.* Operating on the assumption that it need only find the Board's interpretation of the INA to be "permissible," the Third Circuit had no difficulty in applying *Lok's* finality principle to a case where the seven-year domicile requirement had been met. The court found the Board's rule "permissible" "[i]f for no other reason than ease of application," because "it is reasonable to attempt to establish one single standard for the time an alien's lawful permanent resident status changes for all purposes under section 212(c)." *Katsis*, 997

F.2d at 1073. The court likened the rule to a statute of limitations because it sets "the last day upon which an alien can establish statutory eligibility for section 212(c) relief on a motion to reopen proceedings." *Id.*[16] In the court's view, this bright-line rule "sets the last day through which an alien can manipulate deportation proceedings by his or her after-the-fact manufacture of additional evidence of equities to balance the adverse factor or factors he or she must overcome to receive discretionary relief under section 212(c)." *Id.* The Board's rule therefore "reduces the incentive to file meritless petitions for review in the circuit courts, which lessens the burdens on those courts, just to buy the alien more time to create after-the-fact evidence of equities." *Id.* at 1074.

We find *Katsis* problematic in several respects. First, it assumes that aliens always manufacture equities to support their applications for a discretionary waiver of deportation and that they have ample time to engage in such "manipulation" *before* a final administrative order of deportation is issued. Thus, the court took a rather skeptical view of the evidence that might be offered after that time:

> [I]f it takes longer than the period between the IJ's determination of deportability and ineligibility for section 212(c) relief and the Board's affirmance of that determination for an alien to find (or create) new evidence, either (1) the alien has not been sufficiently diligent in his efforts, (2) the probabilities do not favor the existence of material evidence unavailable at the time of the IJ's decision, (3) any such evidence that may exist is stale, or (4) the alien should be given no more time to create evidence after the fact.

*Id.* at 1075. We do not share the Third Circuit's view that all evidence weighing in favor of an alien has somehow been manufactured. Although some evidence relevant to the section 212(c) inquiry may be subject to

---

15. As we do, the court thought that *Lok* was limited to the question of "when an alien ceases to accumulate credit toward seven years of lawful permanent residence." *Id.* at 1146.

16. The court explained that "[t]his unambiguous cut-off date discourages unnecessary and prolonged litigation by its very clarity, promotes finality, and avoids adjudication of stale claims as all statutes of limitations do." *Id.*

manipulation (*e.g.,* the alien's marital status or whether he has family remaining in the country of deportation), *Katsis* fails to account for cases where circumstances change with no help from the alien. Akrap, for example, did not manufacture either the conflict in Croatia or the death of his father, and Henry did not manufacture his father's death or his mother's illness. Because the petitioners had no control over the fact that these events occurred after their deportation hearings and the entry of final orders of deportation, the belated nature of their motions to reopen cannot be attributed to a lack of "sufficient diligence." We also cannot simply dismiss the evidence as probably immaterial, as *Katsis* suggests. *See id.* "Manufactured" evidence can of course be weeded out when the Board considers whether to reopen proceedings in the exercise of its discretion. That concern therefore does not justify a rule precluding *all* evidence of changed circumstances at the outset. *See Butros,* 990 F.2d at 1146 (Fernandez, J. concurring).[17]

■ We also find the Third Circuit's analogy to a statute of limitations inapt. *See Katsis,* 997 F.2d at 1073. The Board's rule does not operate like a statute of limitations because both Henry and Akrap (and Katsis, Butros, and Vargas for that matter) already petitioned for a discretionary waiver of deportation before entry of a final administrative order of deportation. They thus satisfied any "statute of limitations" and are simply seeking to reopen their earlier applications to enable the Board to consider new evidence. Their motions are thus not unlike those under Fed.R.Civ.P. 60(b), in which parties seek relief from a final judgment to present newly discovered evidence. *See Butros,* 990 F.2d at 1146 (Fernandez, J., concurring). In the civil arena, such relief is not prohibited after entry of a final judgment, and the Board's own regulation recognizes that it should not be foreclosed in this context either. *See* 8 C.F.R. § 3.2.

■ Granted, our analysis diverges from *Cerna's* conclusion that a motion to reopen, unlike a motion to reconsider, constitutes a new, unrelated application for section 212(c) relief. *See Cerna,* Interim Decision 3161, at 6–7; *see also supra,* at 436. Yet we find the distinction drawn by the Board in *Cerna* to be somewhat artificial. Simply because a motion to reopen contemplates the consideration of additional evidence does not make it "a different application" that must be "adjudicated on a different factual record." *Cerna,* Interim Decision 3161, at 6. Rather, the underlying application presumably remains the same, as does the factual record; they are simply supplemented with the new evidence.[18] It is inconceivable that the Board would commence an entirely new proceeding with no reference to the earlier application. We therefore agree with *Vargas* that a motion to reopen merely revives the earlier section 212(c) application and does not constitute an entirely new request for discretionary relief. *See Vargas,* 938 F.2d at 362; *see also Butros,* 990 F.2d at 1145. The Board's contrary position is strained and unreasonable.

■ As for the scope of 8 C.F.R. § 3.2, the Board maintained in *Cerna* that it was not obliged to reopen proceedings because the "'regulation is framed negatively'" and "'it directs the Board not to reopen unless certain showings are made.'" *Cerna,* Interim Decision 3161, at 5 (quoting *INS v. Jong Ha Wang,* 450 U.S. 139, 144 n. 5, 101 S.Ct. 1027, 1031 n. 5, 67 L.Ed.2d 123 (1981)). Yet the required "showings" relate to whether the "evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing." 8 C.F.R. § 3.2. It is quite possible that both Henry and Akrap could make these showings, yet they have been denied the opportunity even to try on the

---

**17.** We similarly disagree with *Katsis* that the Board's rule is reasonable simply because of its "ease of application." *See Katsis,* 997 F.2d at 1073. When a matter as serious as deportation from this country is at issue, we should not focus on ease of application, for "easy" rules often preclude any inquiry into individual equities, which is what section 212(c) is all about.

**18.** In fact, Akrap's counsel informed us at oral argument that the Board itself does *not* require a new application, nor does it require payment of a new filing fee when a motion to reopen an earlier section 212(c) application is submitted.

ground that they are subject to administratively final orders of deportation. Although the Board does have broad discretion to deny motions to reopen (see *INS v. Doherty*, —— U.S. ——, ——, 112 S.Ct. 719, 720, 116 L.Ed.2d 823 (1992); *INS v. Abudu*, 485 U.S. 94, 105–06, 108 S.Ct. 904, 912–13, 99 L.Ed.2d 90 (1988)), the regulation does not empower the Board to deny such a motion solely on the ground offered here. See *Butros*, 990 F.2d at 1144; *Vargas*, 938 F.2d at 361–62. The Board's interpretation thus amounts to an amendment of the regulation, made without the benefit of notice and the opportunity for public comment.

We are not deciding today that either Henry or Akrap has established a right to discretionary relief under section 212(c), or even that the Board must reopen their section 212(c) applications. But we do find that both Henry and Akrap survive the first hurdle—they remain statutorily eligible to pursue section 212(c) relief because both are seeking only to reopen timely section 212(c) applications where both have established the seven years of lawful unrelinquished domicile. They are therefore entitled to have their supplemental evidence considered. Because we find the Board's interpretation of the INA and its own regulation to be unreasonable, we grant the petitions for review in appeal Nos. 92–2801 and 92–3104 and remand both cases to the Board.

## C. Board's Denial of Henry's First Motion to Reopen

Although it believed that Henry was statutorily ineligible for section 212(c) relief when he filed both his first and second motions to reopen, the Board considered the merits of Henry's first motion and denied the

motion on that ground as well. The Board's reliance on the statutory ineligibility ground was erroneous, but we must affirm the Board in appeal No. 92–1476 if it did not abuse its discretion in denying the motion on the merits.

As we explained in *Johnson v. INS*, 962 F.2d 574, 576 (7th Cir.1992), the Board may deny reopening on at least three independent grounds:

failure to establish a prima facie case for the underlying relief sought; failure to introduce new, material evidence previously unavailable which was not considered in the initial review; or a determination that even if the two previous conditions existed, the movant would not be entitled to discretionary relief.

(citing *INS v. Abudu*, 485 U.S. 94, 104–05, 108 S.Ct. 904, 911–12, 99 L.Ed.2d 90 (1988)). We review a denial under either of the first two grounds for an abuse of discretion, which would occur only if the denial "is made without rational explanation, inexplicably departs from established policies, or rests on an impermissible basis such as invidious discrimination against a particular race or group." *Id.* at 577. A discretionary denial (the third possible ground) is also reviewed for an abuse of discretion, but in that instance we must only consider whether the Board's discretion was exercised arbitrarily or capriciously. *Id.; see also Garcia–Lopez v. INS*, 923 F.2d 72, 74 (7th Cir.1991).

Henry's first motion to reopen was based on a claim that he had received ineffective assistance of counsel in presenting his section 212(c) application to both the IJ and the Board.[19] Henry suggested that his counsel had been ineffective because he presented no witnesses, other than Henry himself, in

---

**19.** Henry also now suggests that he was denied due process insofar as the IJ did not advise him of the right to have counsel of his choice or of the availability of free legal services. Moreover, the IJ seemingly ignored Henry's direct "No sir" when asked whether the gentleman appearing on his behalf was his lawyer. Although we are certainly disturbed by the IJ's willingness to proceed in the face of Henry's response, we believe that Henry waived this due process argument by failing to raise it before the Board. In neither of the two motions to reopen did Henry advance this argument, which is especially troubling be-

cause the first motion focused almost exclusively on the ineffectiveness of counsel. We will not entertain an argument made for the first time in a petition for review when Henry had the opportunity but failed to first present the issue to the Board in either of his motions to reopen. See *Castaneda–Suarez v. INS*, 993 F.2d 142, 144 (7th Cir.1993) (declining to consider ineffectiveness claim that was not raised on appeal to the Board but which was the subject of a pending motion to reopen); see also *Perez–Rodriguez*, 3 F.3d at 1080–81.

support of the application and because he failed to file a brief in support of Henry's appeal to the Board. Numerous friends and family members submitted affidavits attesting to Henry's character and stating that they would have testified at Henry's deportation hearing if Henry's former counsel had asked them to do so. The Board found that Henry was ineligible for discretionary relief based on ineffectiveness because he had not complied with the requirements of *In re Lozada*, 19 I. & N. Dec. 637 (BIA 1988), *aff'd*, 857 F.2d 10 (1st Cir.1988).[20] Nonetheless, the Board reached the merits of Henry's claim and concluded that Henry had received a full and fair hearing, that his former counsel had presented substantial evidence in his favor, and that the new affidavits were largely cumulative. The Board accordingly "found no basis" for Henry's ineffective assistance claim.

■ It is well settled that deportation hearings are in the nature of civil proceedings and that aliens therefore "have no constitutional right to counsel under the Sixth Amendment." *Castaneda–Suarez v. INS*, 993 F.2d 142, 144 (7th Cir.1993); *see also Lozada v. INS*, 857 F.2d 10, 13 (1st Cir. 1988); *United States v. Campos–Asencio*, 822 F.2d 506, 509 (5th Cir.1987); *Magallanes–Damian v. INS*, 783 F.2d 931, 933 (9th Cir. 1986). We explained in *Castaneda–Suarez*, however, that "counsel at a deportation hearing may be 'so ineffective as to have impinged upon the fundamental fairness of the hearing in violation of the fifth amendment due process clause.'" 993 F.2d at 144 (quoting *Magallanes–Damian*, 783 F.2d at 933); *see also Saleh v. United States Dep't of Justice*, 962 F.2d 234, 241 (2d Cir.1992). Yet ineffectiveness rises to the level of a due process violation only " 'if the proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting his

case.' " *Lozada*, 857 F.2d at 13 (quoting *Ramirez–Durazo v. INS*, 794 F.2d 491, 499–500 (9th Cir.1986)).

Even if we were to assume that counsel was ineffective in presenting Henry's request for section 212(c) relief at the deportation hearing and on appeal to the Board, and that counsel's ineffectiveness resulted in a denial of due process, we believe that in these circumstances the Board may cure any "fundamental unfairness" if it carefully considers the supplemental evidence that accompanies the second motion to reopen. *See Lozada*, 857 F.2d at 14 (Board's careful attention to motion to reopen negated any due process violation). We are confident that on remand the Board will consider all available evidence, including the numerous affidavits, in determining whether to reopen Henry's request for discretionary relief.[21] In the end, therefore, the Board's resolution of the section 212(c) application should not depend on whether Henry's former counsel was ineffective. We accordingly deny the petition for review in appeal No. 92–1476.

### III. CONCLUSION

For the foregoing reasons, we DENY Henry's petitions for review in appeal Nos. 91–2252 and 92–1476. We GRANT Henry's petition for review in appeal No. 92–2801 and Akrap's petition for review in appeal No. 92–3104, and REMAND both cases to the Board so that it may consider whether to reopen petitioners' applications for discretionary waivers of deportation under section 212(c).

IT IS SO ORDERED.

---

**20.** The Board explained that *Lozada* requires: (1) that the motion be supported by an affidavit by the respondent setting forth in detail the agreement that was entered into with counsel with respect to the actions to be taken and what representations counsel did or did not make to the respondent in that regard; (2) that counsel be informed of the allegations leveled against him and be given an opportunity to respond; and (3) that the motion reflect

whether a complaint has been filed with the appropriate disciplinary authorities with respect to any violation of counsel's ethical or legal responsibilities, and if not, why. (Henry App. Ex. 2, at 2–3.)

**21.** If it refuses to do so, we may again entertain the ineffectiveness claim in a subsequent petition for review.